## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>ONE JET, INC.,<br><br>                        Debtor.<br>ROSEMARY C. CRAWFORD, Chapter 7 Trustee,<br><br>                Plaintiff,<br><br>        v.<br><br>MATTHEW R. MAGUIRE; HEATHER R. MAGUIRE; JEAN ANN RIEKE; THE ESTATE OF PATRICK JAMES MAGUIRE; JEAN ANN RIEKE AS EXECUTRIX OF THE ESTATE OF PATRICK JAMES MAGUIRE; THE PATRICK JAMES MAGUIRE AND JEAN ANN RIEKE REVOCABLE TRUST; TRUST DOES 1-3; JEAN ANN RIEKE AS TRUSTEE OF THE PATRICK JAMES MAGUIRE AND JEAN ANN RIEKE REVOCABLE TRUST; MAGUIRE/MAGUIRE INCORPORATED; PRIMAIR VENTURE PARTNERS; SPINNAKER AIRCRAFT HOLDING, LLC (f/k/a ONE JET AIRCRAFT HOLDING, LLC); ELM AEROSPACE HOLDINGS, LLC; TRI-STATE CHARTER HOLDINGS, LLC; TRI-STATE CHARTER LEASING, LLC; TRI-STATE CHARTER, LLC; BANK OZK (f/k/a BANK OF THE OZARKS, INC.); and AIRCRAFT HOLDING COMPANY ONE, LLC,<br><br>                Defendants. | Bankr. Case No. 18-24070-GLT<br><br>Chapter 7<br><br>Adv. Pro. No. _____ |

## **COMPLAINT**

Rosemary C. Crawford (the "Trustee" or "Plaintiff"), in her capacity as Chapter 7 Trustee

for the Estate of OneJet, Inc. (the "Debtor" or "One Jet"), by and through the undersigned counsel,

files this complaint (the "Complaint") against Matthew R. Maguire; Heather R. Maguire; Jean Ann

Rieke; the Estate of Patrick James Maguire; Jean Ann Rieke as Executrix of the Estate of Patrick

James Maguire; the Patrick James Maguire and Jean Ann Rieke Revocable Trust; Trust Does 1-3;

Jean Ann Rieke as Trustee of the Patrick James Maguire and Jean Ann Rieke Revocable Trust;

Maguire/Maguire Incorporated; PrimAir Venture Partners; Spinnaker Aircraft Holding, LLC (f/k/a

One Jet Aircraft Holding, LLC); Elm Aerospace Holdings, LLC; Tri-State Charter Holdings, LLC;

Tri-State Charter Leasing, LLC; Tri-State Charter, LLC; Bank OZK (f/k/a Bank of the Ozarks,

Inc.); and Aircraft Holding Company One, LLC (collectively, the "Defendants").  In support of

this Complaint, Plaintiff hereby alleges, upon information and belief, as follows:

## INTRODUCTION

This is an action for breach of fiduciary duty, fraud, conversion, unjust enrichment and

preferential and fraudulent transfers arising from the collapse of OneJet, an indirect air carrier that

sold public charter flights in regional air markets from April 2015 through August 2018.  At all

times pertinent to this Complaint, OneJet's CEO, Matthew Maguire, and his parents, Patrick

Maguire and Jean Rieke (collectively, the "Maguires" or "Maguire Family"), were directors,

officers and controlling shareholders of OneJet.

Over the course of OneJet's approximately three-year operational lifespan, the Maguires

wasted tens of millions of dollars chasing what was, at best, a pipe dream that evolved into a

fraudulent scheme, all at the expense of OneJet and its innocent shareholders and creditors.  The

Maguires ignored and misrepresented material information concerning OneJet's financial

condition and performance, including that OneJet was insolvent or in the vicinity of insolvency

from at least May 2015 onward.  Even when the Maguires clearly recognized that OneJet was not

a viable business, they prolonged its life through various infusions of capital from

Maguire/Maguire Incorporated, a company that was owned by Patrick Maguire and Jean Rieke.

These infusions provided OneJet just enough capital to continue operations and secure additional outside investment funds, millions of dollars of which were promptly transferred to Maguire/Maguire at the expense of OneJet and its creditors.  Millions more were used to enrich the Maguires in other ways, including through the payment of exorbitant and arbitrary sums from OneJet to Matthew Maguire at his whim.  The Maguires further wasted tens of millions of dollars in an expensive and obviously doomed expansion of OneJet's operations, cultivating the illusion of a successful business by touting deals to purchase additional aircraft and other businesses.  The Maguires continue to be enriched by OneJet's assets to this day.  Before its collapse, OneJet spent millions to purchase and maintain a jet – a jet that the Maguires registered to a separate company owned by Patrick Maguire, and have used to generate substantial revenues for themselves since OneJet ceased operations.

As a result of the Maguires' conduct, as set forth more fully below, OneJet – a company that had owned jet aircraft and received millions of investment dollars in the several preceding months – was compelled to abruptly cease operations in August 2018 with virtually no assets, leaving legitimate creditors without any source of payment.  OneJet suffered significant damages as described below and Plaintiff, as the Trustee, brings this action to recover those damages.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a) and 1334(b) because the claims asserted herein arise in or are related to the instant chapter 7 case, *In re One Jet, Inc.*, pending in United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") at Case Number 18-24070-GLT (the "Case"); 28 U.S.C. § 1331 because this litigation arises under the laws of the United States; 28 U.S.C. § 1367(a) and pursuant to principles of supplemental, pendent and ancillary jurisdiction.

2.      This Court has personal jurisdiction over each of the Defendants pursuant to Federal Rule of Bankruptcy Procedure 7004(f) and other applicable law.

3.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408, 1409, 1391(a)(2), 1391(a)(3) and 1391(b)(2)-(3).  This adversary proceeding is a "core" proceeding to be heard and determined by this court pursuant to 11 U.S.C. § 157(b)(2).

4.      The Trustee consents to the jurisdiction of the bankruptcy court and the entry of final orders or judgment by the bankruptcy judge.

## THE PARTIES

### A.    The Plaintiff

5.      On October 17, 2018 (the "Petition Date"), certain creditors (the "Petitioning Creditors") initiated this Case by filing an involuntary Petition for relief under Chapter 7 of Title 11 of the Bankruptcy Code against the Debtor.

6.      On November 13, 2018, the Court entered an order for relief [Doc. No. 28], granting the Petition against the Debtor.

7.      On November 13, 2018, the Trustee was appointed to administer the estate of the Debtor.  The Trustee is the duly appointed, qualified and acting trustee in the Case and has the authority and standing to commence this adversary proceeding and to prosecute all causes of action asserted herein.

8.      On or about February 27, 2019, the Court entered an Order authorizing the Employment of Bernstein-Burkley, P.C., as Special Counsel to the Trustee ("Special Counsel") [Doc 451].

B.      **The Defendants**

### Matthew R. Maguire

9.      Matthew R. Maguire ("Matt Maguire" or "Maguire") is an adult individual with an address of 20 Childs Street, Penthouse 02, Cambridge, Massachusetts 02141.

10.     Matthew Maguire was at all times pertinent to this Complaint a director and the CEO of OneJet.

11.     Maguire was an "insider" of OneJet within the meaning of 11 U.S.C. §101(31) at all times pertinent to this Complaint.

### Heather R. Maguire

12.     Heather R. Maguire ("Heather Maguire") is an adult individual with an address of 20 Childs Street, Penthouse 02, Cambridge, Massachusetts 02141.

13.     Heather Maguire is the wife of Matt Maguire.

### Jean Ann Rieke

14.     Jean Ann Rieke ("Jean Rieke" or "Rieke") is an adult individual with an address of 345 Elm Avenue, Larkspur, California 94939.

15.     Rieke is the mother of Matthew Maguire and was the wife of decedent Patrick Maguire.

16.     Rieke was at all times pertinent to this Complaint a Director of OneJet. Rieke was the Secretary of OneJet from the time of its formation through approximately January 2016.

17.     Rieke was an "insider" of OneJet within the meaning of 11 U.S.C. §101(31) at all times pertinent to this Complaint.

18.     Rieke is also the Executrix of the Estate of Patrick James Maguire and the Trustee of the Patrick James Maguire and Jean Ann Rieke Revocable Trust.

**The Estate of Patrick James Maguire & Jean Rieke in her capacity as Executrix**

19.     The Estate of Patrick James Maguire (the "Maguire Estate") is being administered in the Superior Court of California, County of San Mateo, at Case Number 20-PRO-00418.

20.     The Maguire Estate and the Executrix, Rieke, may be served with process at the address of the Estate's appointed Executrix, Rieke, at 345 Elm Avenue, Larkspur, California 94939.

21.     For the avoidance of doubt, claims set forth in this Complaint against the Maguire Estate are also asserted against Rieke in her capacity as Executrix of the Maguire Estate.

22.     Patrick Maguire ("Patrick") was at all times pertinent to this Complaint a Director and officer of OneJet prior to his death on December 21, 2019.  Patrick served and/or held himself out as the Treasurer and CFO of OneJet beginning in April 2015, and as Secretary as of at least January 2016, through the time of his death.

23.     Patrick was an insider of OneJet within the meaning of 11 U.S.C. §101(31) at all times pertinent to this complaint.

**The Patrick James Maguire and Jean Ann Rieke Revocable Trust, Jean Rieke in her capacity as Trustee and Trust Does 1-3**

24.     The Patrick James Maguire and Jean Ann Rieke Revocable Trust (the "Trust") was established by a Revocable Trust Agreement dated May 27, 1993 (the "Trust Agreement").

25.     If and to the extent that the Trust or its property has been divided or distributed into other trusts, for purposes of this Complaint such trusts are named herein as Trust Does 1-3 and subsumed within any reference to the Trust.

26.     The Trust, Trust Does 1-3 and Rieke as Trustee, may be served with process at the address of the Trustee, Rieke, at 345 Elm Avenue, Larkspur, California 94939.

27.     For the avoidance of doubt, claims set forth in this Complaint against the Trust are also asserted against Rieke in her capacity as Trustee of the Trust.

28.     The Trust Agreement designated Patrick and Rieke as the Trustors and Trustees of the Trust.

29.     Rieke is both the Trustee and presently the sole beneficiary of the Trust.  Maguire is a contingent beneficiary of the Trust.

30.     The Trust holds complete or partial ownership interests in certain of the Defendant entities named in this Complaint.

**Maguire/Maguire, Incorporated**

31.     Maguire/Maguire, Incorporated ("Maguire/Maguire") is a California corporation with an address of 1100 Larkspur Landing Circle S, Suite 108, Larkspur, California 94939.

32.     Patrick and Rieke were at all times pertinent to this Complaint the sole and equal shareholders of Maguire/Maguire until Patrick's death, whereupon his shares are believed to have passed to the Maguire Estate or the Trust.

33.     Rieke is the registered agent of Maguire/Maguire and became its sole officer and director following Patrick's death.

**PrimAir Venture Partners**

34.     PrimAir Venture Partners ("PVP") is general partnership that Patrick, Rieke and Maguire/Maguire (collectively, the "PVP Partners") formed pursuant to a written agreement dated May 16, 2014, and was registered as a fictitious entity name by Patrick and Rieke in Marin County, California on June 6, 2014.  PVP may be served with process at the address of its Partner, Rieke, at 345 Elm Avenue, Larkspur, California 94939.

7

35.     It is believed that Patrick's interest in PVP passed to the Maguire Estate or the Trust upon his death.

### Spinnaker Aircraft Holding, LLC

36.     Spinnaker Aircraft Holding, LLC ("Spinnaker"), formerly known as One Jet Aircraft Holding, LLC, is a Delaware limited liability company with an address of 1100 Larkspur Landing Circle, Suite 108, Larkspur, California 94939.

37.     Patrick formed Spinnaker on August 30, 2016, and was its sole member until his death, whereupon his interest in Spinnaker is believed to have passed to the Maguire Estate or the Trust.

### Elm Aerospace Holdings, LLC

38.     Elm Aerospace Holdings, LLC ("Elm Aerospace") is a Pennsylvania limited liability company with a registered agent address of 1150 First Avenue, Suite 511, King of Prussia, Pennsylvania 19406.

39.     Matt and Heather Maguire formed Elm Aerospace on February 7, 2019, and are its sole members.

### Tri-State Charter Entities

40.     Tri-State Charter Holdings, LLC is a Pennsylvania Limited Liability Company with an address of 214 College Park Plaza, Johnstown, Pennsylvania 15904.

41.     Tri-State Charter Leasing, LLC is a Pennsylvania Limited Liability Company with an address of 214 College Park Plaza, Johnstown, Pennsylvania 15904.

42.     Tri-State Charter, LLC ("Tri-State Charter") is an Indiana limited liability company with an address of 6101 Flightline Drive, Evansville, Indiana 47711.

43.     Tri-State Charter Holdings, LLC, Tri-State Charter Leasing, LLC and Tri-State Charter, LLC are referred to collectively as "Tri-State Charter," "Tri-State" or the "Tri-State Charter Entities."

44.     Matt and Heather Maguire hold a 30% ownership interest in one or more of the Tri-State Charter Entities through Elm Aerospace.

### Bank OZK

45.     Bank OZK (formerly known as Bank of the Ozarks, Inc.) is an Arkansas corporation with a principal address of 18000 Cantrell Road, Little Rock, Arkansas 72223.

### Aircraft Holding Company One, LLC

46.     Aircraft Holding Company One, LLC is an Indiana limited liability company with an address of 2101 County Road 6 West, Elkhart, Indiana 46514.

## FACTUAL BACKGROUND

A.     **OneJet's Formation and Governance**

47.     The Debtor is a California corporation originally formed as PrimAir, Inc. on February 13, 2007.  The company name was changed to One Jet on or about October 9, 2014.

48.     Matt Maguire, Patrick and Jean Rieke were the founders and initial shareholders of OneJet.  Each member of the Maguire Family sat on One Jet's Board of Directors at all times pertinent to this Complaint, and served as officers of OneJet as described above.

49.     Ron Dwyer served as OneJet's CFO beginning in 2009 and into late May 2015. Christopher Chaput was hired with the title of CFO on January 1, 2016 and remained employed by OneJet through late July 2018.

50.     David Gross assumed the position of COO for One Jet from April 2014 through at least early 2017.  Tom Del Valle thereafter occupied the COO position from mid-January 2018 onward.

51.     It is believed that Ron Dwyer, Christopher Chaput, David Gross and Tom Del Valle (collectively, the "Innocent Officers") were not aware of, nor participated in, the breaches and conduct described in this Complaint and give rise to the claims asserted herein, which the Maguires concealed or avoided disclosing to the Innocent Officers.

**B.     OneJet's Initial Capitalization and Flight Operations**

52.     Patrick Maguire and Rieke ostensibly provided OneJet startup capital and purchased shares of OneJet stock through PVP.  All monies OneJet purportedly received from, or through, PVP were in fact solely contributed by Maguire/Maguire.

53.     In early 2015, OneJet also secured approximately $1.7 million in funding from outside equity investors.

54.     OneJet used the aforementioned capital to lease two jets and make arrangements for the aircraft to be operated by Pentastar Aviation Charter, Inc. ("Pentastar"), which holds an Air Operator Certificate (which is required to operate commercial flights under the Federal Aviation Administration's regulations).

55.     OneJet's first flight operations commenced in April 2015, beginning with flights between its base city, Indianapolis, and Milwaukee.

56.     OneJet established operating infrastructure at Pittsburgh International Airport and began offering flights from Milwaukee and Indianapolis to Pittsburgh in May 2015.

57.     By early 2016, OneJet had raised approximately $7.9 million through the sale of shares of its Common and Series A stock.

## C.    OneJet's Pivot to Pittsburgh

58.     In the spring of 2016, OneJet shifted its focus and base of operations from Indianapolis to Pittsburgh, in order to receive $3 million in state and county funding.

59.     On April 21, 2016, OneJet entered into a Credit Agreement with the Redevelopment Authority of Allegheny County, Pennsylvania (the "Redevelopment Authority"), which provided OneJet with a low interest loan in the amount of $500,000.  OneJet subsequently received a second loan from the Redevelopment Authority, in the amount of $1 million, in April 2017.

60.     OneJet also received a $500,000 low interest loan from the Pennsylvania Department of Community and Economic Development, pursuant to a Loan Agreement dated May 12, 2016.

61.     On June 10, 2016, OneJet entered into an Airline Operating Agreement and Terminal Building Lease with the Allegheny County Airport Authority (the "Airport Authority"). OneJet executed an Economic Development Distribution Program Offer Agreement at the same time, and received a $1 million grant from the Airport Authority.

62.     As part of its transition to Pittsburgh, OneJet moved its aircraft from Pentastar to another Air Operator Certificate Holder, Corporate Flight Management ("CFM").

63.     CFM began operating OneJet aircraft out of Pittsburgh on flights that serviced Indianapolis, Milwaukee and Hartford in June 2016.

## D.    OneJet Expands its Fleet and Purchases its First Aircraft

64.     After increasing its routes and operations in Pittsburgh, OneJet likewise expanded its existing fleet of two aircraft in September 2016 by leasing two more jets.

65.     OneJet also purchased a Hawker Beechcraft 400XP jet bearing tail number N488TM ("N488TM"), which was one of the aircraft it had been leasing from Aircraft Holding Company One, LLC ("Aircraft Holding").

66.     OneJet purchased N488TM from Aircraft Holding pursuant to an August 29, 2016 Aircraft Purchase and Sale Agreement (the "Sale Agreement") that Maguire executed on behalf of OneJet.

67.     The Sale Agreement states a purchase price of $2,175,000.   OneJet paid $813,667.67 in connection with the execution of the Sale Agreement and at the closing on September 29, 2016, and monthly finance payments thereafter.

68.     Having established itself in Pittsburgh, OneJet successfully raised approximately $4 million in 2016 by selling shares of its Series B Preferred stock, primarily to investors in the Pittsburgh area.

## E.      OneJet's Insolvency and Mismanagement

69.     Despite OneJet's expansion and outward appearance of success through 2016, all was decidedly not well with the company.

### The Maguires' Failure to Implement Appropriate Corporate Policies, Procedures and Controls

70.     A fundamental problem throughout OneJet's operational life was that it lacked even the minimal policies or procedures necessary to operate the company in an informed, prudent and appropriate manner.

71.     No minutes exist from meetings of OneJet's board of directors except for certain months in 2016 and February 2017.

72.     More importantly, OneJet did not have meaningful accounting, recordkeeping or financial control procedures and systems at any relevant time.

73.     All of OneJet's financial records and data for times prior to early or mid-2016 was irretrievably lost because OneJet failed to pay the IT vendor that hosted that information. Consequently, Erika Davis ("Davis"), a contractor who served as OneJet's primary bookkeeper and accountant beginning in early 2016, had to attempt to reconstruct OneJet's financials to provide a starting point for accounting purposes moving forward.

74.     In a series of November 2017 emails, Maguire questioned Davis about a request made to OneJet's fuel vendors for account statements and asked: "Are we not regularly recording these balances in the accounting system as they come through?"  Davis responded:  "We have not had an accounting system until now.  I'm now paying for monthly Quickbooks online [so] that my team has access."

75.     The problem was exacerbated, and partly caused, by the fact that Maguire persistently concealed and avoided disclosure of OneJet financial information to anyone, including OneJet's own employees and officers, particularly its CFO, Christopher Chaput.

76.     The failure to establish reliable recordkeeping and accounting systems meant that not only OneJet's projected financial performance, but also its historic performance and current financial condition, could not be, and in fact never were, fully known.

77.     The OneJet "financial statements" Maguire relied upon and disseminated to third-parties did not reflect data concerning OneJet's actual operating expenses.  Instead, the financial statements contained mere "estimates" of OneJet's financial performance, derived from the application of general industry averages for metrics such as fuel prices, fuel consumption and maintenance costs per hour flown for the type of aircraft that CFM operated on OneJet's behalf. According to Maguire:

> We had estimates, and, again, we never said that we had audited, reviewed financials or anything else, but we had estimates of financial performance and status of the — of

the company.... When I say estimates, it was an attempt to take fairly disorganized information and, you know, apply some general industry metrics, I guess or structure to how typically you would display that. And, again, I say typically. I had never run a company before. I'd certainly never run an airline before.

78.     Thus, Maguire knowingly steered OneJet without information sufficient to fully understand the company's past performance and current position, or to make informed, realistic plans for its future. Indeed, Maguire, as CEO, did not even have access to any accounting software used by OneJet or its contractors.

79.     The absence of a meaningful accounting system also had more immediate, tangible consequences.

80.     For example, OneJet's bank accounts were consistently overdrawn and credit card balances were not timely paid, thereby obligating the company to pay unnecessary fees, penalties and interest charges.

81.     OneJet's taxes were also not paid in full or on time. Consequently, the Internal Revenue Service filed a $621,556 tax lien against OneJet for excise taxes OneJet had failed to pay beginning in September 2015. Patrick received and forwarded multiple IRS notices of OneJet's tax delinquency to Matt Maguire.

**OneJet's Insolvency**

82.     Despite having operated revenue flights since April 2015 and secured substantial funding through equity investments, grants, and low interest government loans, OneJet's operating revenue never come close to covering its expenses. Thus, OneJet was chronically undercapitalized, and both the business revenue it earned and investment capital it raised was rapidly exhausted.

83.     By way of illustration, a profit and loss statement Davis prepared for 2015 shows that OneJet generated approximately $938,000 in revenues with expenses of $8.4 million, netting

a loss in excess of $7.4 million for the year.  In the same year, OneJet's liabilities exceeded its assets by more than $2.9 million.

84.     Davis prepared a profit and loss statement which shows that in 2016, OneJet had approximately $2.1 million in revenues against costs and expenses of $13 million, yielding a loss of $10.9 million.  OneJet's liabilities exceeded its assets by more than $3.3 million by the end of 2016.

85.     Indeed, OneJet's financial condition was already so poor in October 2015 that Maguire sent an email to Patrick and Rieke stating: "We're done.  The company will need to shut down operations come Monday . . . . I guess we'll need to retain a bankruptcy lawyer."

86.     And, in March 2016, Maguire informed Patrick and Rieke that Pentastar was going to cease operating OneJet flights unless its outstanding invoices totaling approximately $83,000 were paid.  Patrick advised Matt Maguire to "inform all the investors and the lawyers and vendors Friday that OneJet is declaring bankruptcy immediately."

**F.     The Maguires Artificially Prolong OneJet's Life**

87.     Although OneJet's operating revenue was not nearly enough to cover its expenses, the company nonetheless was able to continue operations through 2018 because the Maguires frequently caused Maguire/Maguire to provide operating capital to OneJet in amounts varying from $2,000 to $202,000, when no commercially reasonable lender would have done so.

88.     The monies provided by Maguire/Maguire allowed OneJet to maintain a false appearance of viability in order to attract additional outside investment funds.

89.     The cash infusions from Maguire/Maguire were not documented and did not have any fixed term or any specified dates upon which payments were due.  Instead, there was a clear agreement and understanding within the Maguire Family that OneJet would transfer monies to

Maguire/Maguire as soon as OneJet received sufficient funds from investors or funds otherwise became available.

90.     For example, in an October 2015 email chain among Maguire, Patrick and Rieke, Patrick inquired about the status of funds provided by Maguire/Maguire, to which Maguire replied "we just need to get the financing deals done and bring in the larger round of capital  we have a very good story but need to keep hustling."

91.     In a January 2016 email to his accountant, Patrick stated "We expect to be repaid $2,000,000 in 2016 based on series B funding going on now...."

92.     Similarly, in February 2016 Patrick sent an email to Matt Maguire inquiring about OneJet's fundraising and return of monies to Maguire/Maguire.  Maguire responded that "The [Series B stock] subscriptions continue to move forward" and "As discussed, this will be 'first money out.'"

## G.    The Maguires Deepen OneJet's Insolvency and Dissipate Remaining Assets

93.     By early 2017, the Maguires knew, and if they had been properly informed could not help but have known, that OneJet's financial condition was such that the company was no longer viable and was not in a position to survive a further expansion of its operations with the attendant increase in expenses.

94.     In a March 2017 email to Matt Maguire, Patrick agreed to transfer additional funds from Maguire/Maguire into OneJet, while observing: "It seems impossible that OneJet could be losing so much money at so fast a rate."

95.     Similarly, in an April 2017 email to Matt Maguire, Patrick stated: "If at this point you are still needing money from me for basic operations, then it's over.  Is that the case?"  Maguire

indirectly answered Patrick's question in the affirmative by responding:  "We just invested $1M into aircraft. . . . everyone is doing fine, just cash poor time of year."

96.    Nevertheless, Maguire continued to cause OneJet to pursue an aggressive strategy of growth and fundraising.


**OneJet's Rapid and Unsustainable Expansion**

97.    By March 2017, OneJet had added more routes from Pittsburgh servicing Albany, Cincinnati, Hartford, Indianapolis, Louisville, Milwaukee, and Richmond.

98.    As of August 2017, CFM was also operating OneJet flights from Pittsburgh to Nashville and Providence.

99.    In October 2017, OneJet announced the opening of a second base in Milwaukee, and that flights to Columbus and Omaha would begin in November 2017.

100.    In January 2018, OneJet announced the addition of a new route between Buffalo and Albany the next month, which would be accompanied by the introduction of "OneJet Plus" service.

101.    Up to that time, OneJet's fleet had consisted of Hawker 400 light jets capable of carrying up to eight passengers.  In contrast, "OneJet Plus" flights would be operated using much larger Embraer ERJ145 regional jets configured to carry thirty passengers, rather than the airframe's maximum potential load of fifty.

102.    OneJet leased its first ERJ145 jet in January 2018 and a second in February 2018.

103.    In March 2018, OneJet added still more flights, from Pittsburgh to Palm Beach, Kansas City and Memphis, as well as a separate route between Kansas City and Memphis.

104.    In May 2018, OneJet announced that it was working on a deal to acquire Ultimate Jet Charters, LLC ("UJC"), an Ohio-based Air Operator Certificate holder that primarily operated charter and corporate shuttle flights.

105.    At or around that time, UJC began operating certain of OneJet's routes, pursuant to an Aircraft Management Agreement dated April 16, 2018.

**Maguire's Solicitation of Additional Debt and Equity Financing**

106.    In order to satisfy OneJet's urgent need for capital to sustain increased expenditures necessitated by the expansion of its fleet and operations, and to return monies to Maguire/Maguire, Maguire set OneJet on a campaign to raise investment monies with renewed vigor and desperation in early 2017.

107.    To that end, in February 2017 Maguire engaged a securities broker, Boustead Securities, LLC ("Boustead"), to assist in the sale of additional Series B stock in OneJet.  Pursuant to the terms of its engagement with OneJet, Boustead received a commission of ten (10) percent of the proceeds from securities it sold.

108.    Maguire directly, and at times indirectly through Boustead, made materially false and misleading representations concerning OneJet's financial condition and performance to induce prospective investors.

109.    For example, in a December 6, 2016 email to a representative of an investment firm, Maguire represented that each of OneJet's aircraft was "generating approximately $800k in EBITDA...."  That statement was obviously false, as OneJet's direct costs alone greatly exceeded its revenue in 2016.

110.    As another example, Maguire made more widespread and concrete misrepresentations about OneJet's financial performance in a Subscription Agreement that he and Boustead circulated as a "Private Placement Memorandum" to all or virtually all prospective and eventual purchasers of Series B stock beginning in early 2017.    The most significant misrepresentations concerned OneJet's financial performance in 2016, which the Subscription Agreement reported with the following figures rounded to the nearest thousand dollars:

| | |
|---|---|
| Revenue | $2,413,000 |
| Direct Costs | $4,196,000 |
| Gross Profit | $(1,783,000) |
| Operating Expenses | $2,108,000 |
| Operating Income | $(3,891,000) |

111.    By way of comparison, according to the aforementioned profit and loss statement that Davis prepared for 2016, the figures that should have been truthfully reported in the Subscription Agreement are as follows:

| | |
|---|---|
| Revenue | $2,160,000 |
| Direct Costs | $10,089,000 |
| Gross Profit | $(7,929,000) |
| Operating Expenses | $3,000,000 |
| Operating Income | $(10,929,000) |

Thus, OneJet's actual operating losses were nearly three times what Maguire disclosed to induce investors to purchase OneJet stock.

112.    Around the same time, OneJet, with the assistance of Boustead, began to sell purported debt instruments styled as "Term Note and Charter Agreements" ("Charter Notes").  The Charter Notes were typically issued in increments of $150,000, to be repaid by OneJet with ten percent annual interest after a term of three years.

113.    Investors who purchased Charter Notes ("Note holders") became members of what was referred to as the "Charter Program" or "Naples Club."  The basic premise was that Note holders purchased Charter Notes in exchange for the guaranteed use of OneJet aircraft for certain charter and scheduled flights at discounted prices.

114.    Note holders who provided OneJet five days' notice of a planned charter trip were guaranteed the use of a Hawker 400XP jet, for up to 25 flight hours per year.  The cost to Note holders for such trips was specified as $900 per hour of actual flight time, with 12 minutes added for taxiing, plus any actual cost for fuel, landing or related expenses incurred during occupied legs. Note holders were not responsible for costs required to arrange occupied flight legs, such as the positioning or overnighting of OneJet's aircraft or crew.

115.    With respect to scheduled flights, Note holders were guaranteed the right to book 20 seats per month for themselves and immediate family on scheduled shuttle flights between Pittsburgh and Naples, Florida at a price of $200 per one-way ticket.

116.    Note holders were also given the option to exchange any of their allotted 20 monthly seats for any seats available on OneJet's scheduled flights to other destinations at a 50% discount from the published fare price.

117.    The "Charter Program" did not and, as devised and implemented, could not have generated any economic benefit to OneJet.

118.    OneJet lost money on each and every "Charter Program" flight.  That outcome was inevitable and obvious from even a cursory analysis of the relevant economics.

119.    For example, as discussed above, Maguire regularly relied upon aviation industry data to estimate operating costs.  Such data indicates that the estimated crew and maintenance-related costs of operating a Hawker 400XP range from approximately $1,500 to $1,800 per hour.

120.    Assuming the lower cost estimate, OneJet was losing $600 for every hour flown under the "Charter Program" by charging Note holders only $900.  And, that is without considering indirect costs for expenses such as hangars, insurance, aircraft finance or lease payments, taxes, depreciation, corporate overhead, or management fees charged by CFM.

121.    Thus, "Charter Program" flights not only failed to generate profits, but directly caused OneJet to sustain losses and rendered the aircraft unavailable for other flight operations, all on top of the ten percent interest OneJet was obligated to pay on the Charter Notes.

122.    To make matters worse, the unavailability of OneJet's own aircraft often forced OneJet to contract with third-party charter services to operate flights for Note holders.  In these instances, OneJet was frequently required to pay the third-party charter service more than twice the amount OneJet could charge the Note holders under the "Charter Program."

123.    For example, an internal OneJet spreadsheet shows that OneJet contracted a third-party to operate a charter flight on January 26, 2018, at a cost of $9,193.00, and invoiced a Note holder only $3,416.40, because that was the estimated amount due under the "Charter Program" had a OneJet aircraft been used for the flight.

124.    In total, the spreadsheet indicates that from just January 16, 2018, through February 6, 2018, OneJet incurred third-party contract costs totaling $233,192.00 on flights for which it invoiced Note holders only $70,425.59.

## H.    OneJet's Default on Key Obligations and Cessation of Operations

125.    OneJet raised approximately $25 million in additional capital from January 2017 through June 2018, primarily from the sale of Series B stock and Charter Notes to investors in Pittsburgh.  Predictably, however, OneJet quickly burned through the incoming funds without generating anything approaching equivalent revenues.

126.    Indeed, the situation was such that in and October 2017 email chain among the Maguires discussing OneJet's financial condition, Patrick commented to Matt Maguire "It is not clear to me that you as CEO are acting legally."

127.    By mid-2018, OneJet's financial condition had deteriorated to the point that it could no longer be papered over, even by significant influxes of new cash, and OneJet increasingly defaulted on its payment obligations, including obligations to its critical vendors.

128.    For example, in or around late June 2018 AVI Sales & Leasing Services, LLC repossessed one of the ERJ145 jets that it had leased to OneJet earlier that year.

129.    OneJet was also in default with the Airport Authority by failing to pay airline fees and rent due under its terminal lease agreement.

130.    In addition, OneJet was not operating flights out of Pittsburgh to ten other destinations, which was a condition of the $1 million grant it received from the Airport Authority.

131.    On or about July 24, 2018, CFM filed mechanics' liens against six aircraft in OneJet's fleet for debt owed to CFM for aircraft maintenance parts and services, including a lien on N488TM in the amount of $114,664.47.

132.    Pursuant to a Settlement Agreement dated August 14, 2018, all of the mechanic's liens, including the $114,664.47 lien on N488TM, were released in exchange for OneJet's payment of the balance of the CFM debt, which OneJet paid with proceeds derived from the sale of another aircraft that OneJet owned.

133.    Despite OneJet's continuing insolvency and inability to stay current on payments to vendors essential to the company's operations, Maguire continued to solicit investor funds, notably, including $2 million from Vesper Capital pursuant to a Note Payable dated July 10, 2018.

134.    Alarmed by OneJet's evident financial distress, in June 2018 the Airport Authority and a group of investors (collectively, the "Interested Stakeholders") set out to determine OneJet's true financial condition and to salvage it if possible.

135.    At the insistence of the Interested Stakeholders, two consultants, Matthew McDaniel, CPA ("McDaniel") and Seabury Consulting ("Seabury"), were brought in to review OneJet's financials and business plan.

136.    McDaniel was charged with obtaining OneJet's financial records, preparing financial statements and, ultimately, determining OneJet's financial condition and how OneJet had exhausted tens of millions of investment dollars over three years of operations.

137.    In July 2018, McDaniel prepared a year-to-date profit and loss statement, which, due to OneJet's poor recordkeeping, had to be constructed by going through every entry on OneJet's bank account statements and any other records available.

138.    McDaniel also prepared a master spreadsheet, in which he attempted to track the flow of all monies into and out of OneJet from January 31, 2016, onward.

139.    McDaniel commented on the state of OneJet's records in an email to Maguire, explaining that the amount of OneJet's note debt is "not a number we have nailed down at this time" and "Quickbooks is such a mess that the numbers in there don't mean a thing."

140.    Seabury prepared a report that, *inter alia*, provided a critical analysis of OneJet's financial projections and business plan, which Seabury described as lacking "supporting detail"; indicative of "a lack of understanding"; based upon "very aggressive" assumptions; "very optimistic"; and "unsustainable."

141.    With regard to OneJet's recent financial performance, the Seabury report observed that "Year to date through June 2018, OneJet lost $12 million and was losing $2 for every $1 of

revenue." In stark contrast, a profit and loss statement Maguire prepared indicated that OneJet only lost approximately $2.1 million during the same six-month period.

142. By letter dated August 1, 2018, UJC terminated its Aircraft Management Agreement with OneJet on grounds of OneJet's insolvency.

143. On August 21, 2018, UJC announced that the planned deal for OneJet's acquisition of UJC would not go through.

144. On August 29, 2018, OneJet announced that it was temporarily suspending all flight operations, ostensibly to pursue its own Air Operator Certificate.

145. In a September 27, 2018 email to investors, Maguire finally acknowledged that all of OneJet's resources had been exhausted for several weeks, the business could not continue without an infusion of new investment capital, and OneJet was going to be wound up.

**I.**    **The Maguires Improperly Benefited Themselves at the Expense of OneJet and its Other Investors and Creditors**

**The Maguires' Transfers of Funds From OneJet to Maguire/Maguire**

146. At various times, and increasingly near the end of OneJet's operational life, Patrick and Matthew Maguire caused funds to be transferred from OneJet's bank accounts to bank accounts held by Maguire/Maguire.

147. At least $3,884,750.54 was transferred from OneJet to Maguire/Maguire in this manner, of which $2,647,122.04 was transferred during the 12 months preceding the Petition Date.

148. Thus, during the same period in 2018 that OneJet was defaulting on payment obligations to critical vendors and selling an aircraft to remove CFM's mechanic's liens from its other aircraft, Matt Maguire and Patrick were causing OneJet to transfer millions of dollars to Maguire/Maguire.

149.    During this same period, no other investors or lenders of One Jet received the benefit of similar payments.

### OneJet's Payments to Matthew Maguire for Exorbitant and Unsupported Compensation and Expense Reimbursements

150.    The absence of meaningful financial control and record-keeping procedures also created a situation where Maguire was able to pay himself exorbitant sums as compensation and expense reimbursements without question or restraint.

151.    Maguire did not have any contract with OneJet to work and be compensated as an employee, independent contractor, consultant, or otherwise.  Thus, there is no contractual basis to determine whether Maguire was entitled to receive compensation from OneJet, or in what amount.  Nor are there any corporate documents of OneJet that identify an authorized salary or rate of compensation for Maguire.

152.    Maguire's solution for this problem was to extract compensation for himself from OneJet whenever he wanted it, and in whatever amount he wanted at that moment.  To facilitate these payments to himself, Maguire would instruct OneJet's bookkeeper and accountant (Davis) to transfer funds from OneJet's bank account to his personal bank account for "fees" in amounts that were evidently arbitrary and almost invariably large, round numbers.

153.    It is believed, and therefore averred, that the "fees" Maguire caused himself to be paid were, in whole or in part, in the nature of commissions or finder's fees for investment monies he brought into OneJet and/or revenues on flights he sold to OneJet customers.  Indeed, Maguire even sought to require certain OneJet employees who did have employment contracts, such as Christopher Chaput, to secure investment monies as a condition of receiving compensation.

154.    Maguire applied a similarly random and undisciplined approach to his alleged business expenses.  He would direct Davis to transfer funds from OneJet's bank account to his

personal bank account for reimbursement of alleged business expenses, again in large, round numbers, without providing any documents to substantiate or explain the claimed expenses, or any evidence that the alleged expenses were, in fact, related to OneJet's business or operations.

155.    The following are examples of such payments by OneJet to Maguire, which include his instructions as entered into OneJet's accounting software:

| Date | Memo/Description | Amount |
|------|------------------|--------|
| 05/25/2018 | Per text message | $12,000.00 |
| 05/18/2018 | Erika –<br>Please also set up: - $100k wire to myself (mark $60k expense and $40k fee). | $100,000.00 |
| 05/07/2018 | Erika -<br>Please set up $125k wire to CFM and $16k wire to myself - mark $8k as fee, remainder as expense. | $16,000.00 |
| 12/15/2017 | Per text from Matt Maguire on 12/15 $65k wire; $30k as fee and $35k Expense | $65,000.00 |

156.    The vast majority of transfers from OneJet to Maguire are not accompanied by similar Memo/Description entries to explain their alleged purposes.  The dates and amounts of the 25 largest such transfers from OneJet to Maguire are as follows:

| Date | Amount | Date | Amount |
|------|--------|------|--------|
| 07/03/2018 | $25,000.00 | 12/23/2016 | $22,000.00 |
| 03/16/2018 | $70,000.00 | 12/07/2016 | $35,000.00 |
| 01/15/2018 | $60,000.00 | 10/21/2016 | $34,000.00 |
| 01/15/2018 | $40,000.00 | 08/10/2016 | $30,000.00 |
| 11/16/2017 | $25,000.00 | 08/02/2016 | $30,000.00 |
| 11/10/2017 | $55,000.00 | 07/06/2016 | $40,000.00 |
| 10/15/2017 | $48,000.00 | 06/07/2016 | $26,000.00 |
| 08/15/2017 | $70,000.00 | 04/15/2016 | $45,000.00 |
| 07/15/2017 | $35,000.00 | 04/15/2016 | $26,000.00 |

| 07/15/2017 | $23,000.00 | | 03/15/2016 | $30,000.00 |
| 06/15/2017 | $34,000.00 | | 01/31/2016 | $30,000.00 |
| 05/15/2017 | $25,000.00 | | 01/31/2016 | $25,000.00 |
| 03/15/2017 | $41,000.00 | | | |

157.    Between June 5, 2015, and September 17, 2018, Matt Maguire caused at least $2,347,625.15 to be transferred from One Jet to himself in the foregoing manner for various alleged "fees" and alleged business expenses, all without any employment contract, receipts or supporting documentation of any kind.  Out of that total sum, $892,226 was transferred by OneJet to Maguire within one year of the Petition Date.  Maguire transferred $1,632,624.71 to himself in the two years preceding the Petition Date.

158.    Maguire evidently either did not know, or want to identify, the amount of compensation and reimbursements he received from OneJet, because he did not accurately report those sums on his tax returns.  In his 2015 through 2018 tax returns, Maguire reported business income from OneJet totaling $840,984, as follows:

    2015:  $185,000
    2016:  $180,000
    2017:  $331,000
    2018:  $144,984

159.    In June 2020, Maguire filed amended 2015, 2016 and 2017 tax returns to report business income from OneJet of $148,131, $369,322 and $541,569, respectively.

160.    Apart from receiving payments from OneJet of exorbitant and undocumented sums, Maguire reimbursed himself from OneJet's funds for his personal expenses.

161.    On several occasions, Maguire emailed Patrick to request the transfer of monies from Maguire/Maguire to OneJet, citing the need to pay his credit card balance, which Maguire explicitly acknowledged included personal expenses such as his rent.

162.    Patrick transferred such funds from Maguire/Maguire to OneJet, and Maguire then caused OneJet to disburse the funds to himself, in order to pay personal expenses on his credit card.

163.    On at least one occasion in January 2018, Maguire caused OneJet to transfer approximately $31,000 to Maguire so he could pay a third-party charter service for a personal flight Maguire took with his family.

164.    Similarly, on multiple occasions Maguire used OneJet aircraft for his personal (non-business related) travel, without reimbursing the company for the use of the aircraft.

**The Maguires' Misappropriation and Ongoing Use of N488TM**

165.    As discussed above, OneJet purchased N488TM from Aircraft Holding pursuant to a Sale Agreement dated August 29, 2016 (the "Sale Agreement"), and paid $813,667.67 through the time of closing on September 29, 2016.

166.    On or about September 15, 2016, Patrick and Matt Maguire caused OneJet to enter into an Aircraft Lease Agreement with Spinnaker (then known as OneJet Aircraft Holding, LLC), of which Patrick was the sole member, pursuant to which Spinnaker purported to lease N488TM to OneJet for rental payments of $16,279 per month (the "N488TM Lease").

167.    On or about September 16, 2016, Patrick and Matt Maguire caused OneJet to enter into an Assignment of Aircraft Purchase and Sale Agreement (the "Assignment of Sale Agreement") with Spinnaker and Aircraft Holding, whereby OneJet purported to assign all of its rights and interests in the Sale Agreement to Spinnaker, including a $300,000 deposit that OneJet paid to Aircraft Holding, without receiving any consideration.

28

168.    On or about September 29, 2016, Spinnaker entered into a Term Loan Agreement with Bank OZK (then known as Bank of the Ozarks, Inc.) to borrow $1,500,000 for the stated purpose of purchasing N488TM (the "N488TM Loan").

169.    From the closing on the Sale Agreement on September 29, 2016 through the Petition Date, OneJet made finance payments of $16,283.85 per month on the N488TM Loan totaling at least $358,244.70 directly to Bank OZK.

170.    OneJet also paid all costs of maintaining N488TM through the Petition Date, including upgrades, major overhauls, depositing engine maintenance reserve funds of approximately $363 for each flight hour, and paying $114,664.47 from the proceeds of the sale of another aircraft OneJet owned to remove CFM's mechanic's lien on N488TM.

171.    Notwithstanding that OneJet was named as the "Buyer" in the Sale Agreement, paid $813,667.67 through the closing, made loan payments to Bank OZK for two years, and paid all costs to maintain the aircraft, the Patrick and Matt Maguire caused Spinnaker, rather than OneJet, to be registered with the FAA as the owner of N488TM on October 28, 2016.

172.    Despite being requested by the Trustee, no evidence has been provided by OneJet or by the Maguires to suggest that Spinnaker ever paid any consideration to Aircraft Holding or to OneJet in exchange for Spinnaker's claimed 100% ownership interest in N488TM.

173.    The transactions Patrick and Matt Maguire orchestrated involving the N488TM Lease, Assignment of Sale Agreement and subsequent registration of N488TM's title to Spinnaker as owner, was a sham, artifice and fraudulent scheme which created the appearance that OneJet was leasing N488TM from Spinnaker when, in reality, OneJet essentially purchased the jet for Spinnaker without receiving any consideration in exchange.

174. On August 30, 2019 – one day after OneJet announced suspension of its operations – Patrick filed a Certificate of Amendment changing Spinnaker's name from OneJet Aircraft Holding, LLC to Spinnaker Aircraft Holding, LLC. Patrick remained the sole member and shareholder of Spinnaker after the name change.

175. Since the Petition Date and continuing through and including the present, Spinnaker has generated significant revenue by placing N488TM into charter flight service.

176. On information and belief, maintenance reserve funds paid by OneJet for N488TM and two other aircraft were used by the Maguires and Spinnaker to maintain N488TM after OneJet ceased flight operations.

177. N488TM is operated under the Part 135 certificate of Tri-State Charter, which receives a portion of the revenue generated by aircraft it operates. Matt Maguire formed Tri-State Charter with two former OneJet investors, and Matt and Heather Maguire hold a 30% ownership interest in Tri-State through Elm Aerospace Holdings LLC.

### COUNT I

### BREACH OF FIDUCIARY DUTY
**Against Matt Maguire**

178. The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

179. As a Director and the CEO of OneJet, Matt Maguire owed fiduciary duties to OneJet and its shareholders, including the duties of loyalty, care and good faith.

180. Because OneJet was insolvent, or within the vicinity of insolvency at all times pertinent to this Complaint, Maguire also owed fiduciary duties of loyalty, care and good faith to OneJet's creditors.

181.    Maguire's fiduciary duties required him to, *inter alia*, inform himself of all material information before making business decisions, supervise corporate affairs with an appropriate level of diligence and skill, preserve and grow the value of OneJet, and to generally act in good faith for the common good of OneJet and its shareholders and creditors, without engaging in fraudulent or self-interested transactions.

182.    As set forth more fully above, Maguire breached his fiduciary duties by, among other things:

a.    failing to adequately keep himself informed and exercise reasonable diligence and prudence in the oversight and management of OneJet's business activities, records, organizational structure, financial affairs and assets;

b.    failing to implement or maintain any meaningful procedures or systems for accounting, record-keeping or financial controls in order to track, be informed of, and manage the company's financial activities and condition;

c.    concealing and misrepresenting material information to OneJet's employees, officers and shareholders;

d.    failing to exercise reasonable diligence to be informed of, or willfully disregarding, material information necessary to make prudent, informed business decisions to safeguard or increase the value of OneJet;

e.    failing to employ accountants or retain consultants as necessary to fully and realistically determine OneJet's financial condition;

f.    soliciting additional investments, loans and otherwise accumulating debt that OneJet was clearly unable to repay;

g.    deepening OneJet's insolvency;

h.   failing to preserve, maximize and not dissipate assets for the benefit of OneJet and its creditors;

i.   knowingly or recklessly ignoring that OneJet was insolvent or in the vicinity of insolvency and inadequately capitalized;

j.   wasting corporate assets;

k.   making transfers to and for the benefit of insiders, namely, his parents and entities they owned;

l.   operating OneJet as or with the characteristics of a fraudulent ponzi scheme;

m.   causing OneJet to pay to purchase, finance and maintain N488TM, while diverting OneJet's rights and interests and future revenues of the aircraft to Spinnaker for his own benefit and the benefit of his family, without any payment of consideration to OneJet in exchange;

n.   artificially extending the life of OneJet to secure additional funds from outside investors, with which to pay monies to his parents and entities they owned;

o.   causing OneJet to recklessly expand its business operations and engage in transactions to acquire new aircraft; and

p.   causing himself to be arbitrarily paid exorbitant compensation and be reimbursed for alleged business expenses that were extravagant, undocumented and, at least in part, for personal expenditures.

183.   Maguire breached his fiduciary duties through the above-described acts and omissions, which were fraudulent, willful, knowing, reckless, in bad faith, grossly negligent, improperly motivated, and/or constituted self-dealing.

184.    Maguire's aforesaid conduct fell substantially below the standard of care that would generally be exercised by reasonably prudent directors or officers acting in good faith under similar circumstances.

185.    Maguire's conduct removes him from any protections afforded directors or officers under applicable law, including, without limitation, under California Corporations Code §§ 309 and 204(a)(10).

186.    By the aforesaid conduct and breaches, Matt Maguire directly and proximately caused harm to OneJet, OneJet's property and the bankruptcy estate in an amount to be determined at trial.

187.    The conduct of Maguire was willful, malicious and fraudulent, and justifies the imposition of exemplary damages.

WHEREFORE, the Trustee prays that this Honorable Court enter judgment against Matt Maguire and in favor of the Trustee for damages in an amount to be determined at trial, exemplary damages, attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT II

### BREACH OF FIDUCIARY DUTY
### Against Estate of Patrick Maguire and Rieke

188.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

189.    As Directors and Officers of OneJet, Patrick and Rieke owed fiduciary duties to OneJet and its shareholders, including the duties of loyalty, care and good faith.

190.    Because OneJet was insolvent, or within the vicinity of insolvency at all times pertinent to this Complaint, Patrick and Rieke also owed fiduciary duties of loyalty, care and good faith to OneJet's creditors.

191.    Patrick and Rieke's fiduciary duties required them to, *inter alia*, inform themselves of all material information before making business decisions, supervise corporate affairs with an appropriate level of diligence and skill, preserve and grow the value of OneJet, and to generally act in good faith for the common good of OneJet and its shareholders and creditors, without engaging in fraudulent or self-interested transactions.

192.    Patrick and Rieke had the authority as Directors, Officers, and controlling shareholders to control or intervene in the management, affairs and direction of the Debtor at all relevant times, including with respect to the acts and omissions giving rise to the claims alleged herein.

193.    As set forth more fully above, Patrick and Rieke breached their fiduciary duties by, among other things:

    a.    failing to adequately keep themselves informed and exercise reasonable diligence and prudence in the oversight and management of OneJet's business activities, records, organizational structure, financial affairs and assets;

    b.    failing to implement or maintain any meaningful procedures or systems for accounting, record-keeping or financial controls in order to track, be informed of, and manage the company's financial activities and condition;

    c.    failing to exercise reasonable diligence to be informed of, or willfully disregarding, material information necessary to make prudent, informed business decisions to safeguard or increase the value of OneJet;

d.  failing to employ accountants or retain consultants as necessary to fully and realistically determine OneJet's financial condition;

e.  soliciting or encouraging the solicitation of additional investments, loans and accumulation of other debt that OneJet would clearly be unable to repay;

f.  deepening OneJet's insolvency;

g.  failing to preserve, maximize and not dissipate assets for the benefit of OneJet and its creditors;

h.  knowingly or recklessly ignoring that OneJet was insolvent or in the vicinity of insolvency and inadequately capitalized;

i.  wasting corporate assets;

j.  making, directing and accepting transfers to and for the benefit of themselves and entities they owned;

k.  operating OneJet as or with the characteristics of a fraudulent ponzi scheme;

l.  encouraging, facilitating and otherwise acquiescing in the artificial extension of OneJet's life to secure additional funds from outside investors and return monies to themselves and entities they owned;

m.  causing OneJet to pay to purchase, finance and maintain N488TM, while diverting OneJet's rights and interests and future revenues of the aircraft to Spinnaker for their own benefit and the benefit of their family, without any payment of consideration to OneJet in exchange;

n.  encouraging, facilitating or permitting OneJet to recklessly expand its business operations and engage in transactions to acquire new aircraft; and

35

o.   encouraging, facilitating or disregarding OneJet's continued payments to Matt
Maguire of arbitrary and exorbitant compensation and reimbursement for alleged
business expenses that were extravagant, undocumented and, at least in part, for
personal expenditures.

194.   Patrick and Rieke breached their fiduciary duties through the above-described acts
and omissions, which were fraudulent, willful, knowing, reckless, in bad faith, grossly negligent,
improperly motivated, and/or constituted self-dealing.

195.   Patrick and Rieke's aforesaid conduct fell substantially below the standard of care
that would generally be exercised by reasonably prudent directors or officers acting in good faith
under similar circumstances.

196.   Patrick and Rieke's conduct removes them from any protections afforded directors
or officers under applicable law, including, without limitation, under California Corporations Code
§§ 309 and 204(a)(10).

197.   By the aforesaid conduct and breaches, Patrick and Rieke directly and proximately
caused harm to OneJet, OneJet's property and the bankruptcy estate in an amount to be determined
at trial.

198.   The conduct of Patrick and Rieke was willful, malicious and fraudulent, and
justifies the imposition of exemplary damages.

WHEREFORE, the Trustee prays that this Honorable Court enter judgment against the
Estate of Patrick Maguire and Jean Rieke, jointly and severally, and in favor of the Trustee for
damages in an amount to be determined at trial, exemplary damages, attorney's fees and costs, and
such other relief as this Honorable Court may deem proper and just.

## COUNT III

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
**Against Estate of Patrick Maguire and Rieke**

199.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

200.    Matt Maguire owed fiduciary duties of loyalty, care and good faith to OneJet and its shareholders and creditors at all times pertinent to this Complaint.

201.    Maguire breached those duties by acting and omitting to act as described in this Complaint above, and Paragraph 182 in particular.

202.    Patrick Maguire and Jean Rieke knew or should have known of, or were willfully blind to, Matt Maguire's multiple breaches of fiduciary duties.  With that knowledge, Patrick and Rieke provided material and substantial assistance in connection with, and knowingly participated in, Maguire's breaches.

203.    As a result, Patrick and Rieke are liable as aiders and abettors.  The tortious acts or omissions of Patrick and Rieke as aiders and abettors directly and proximately caused harm to OneJet, OneJet's property and the bankruptcy estate in an amount to be determined at trial.

204.    The conduct of Patrick and Rieke was willful, malicious and fraudulent, and justifies the imposition of exemplary damages.

WHEREFORE, the Trustee prays that this Honorable Court enter judgment against the Estate of Patrick Maguire and Jean Rieke, jointly and severally, and in favor of the Trustee for damages in an amount to be determined at trial, exemplary damages, attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT IV

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
**Against Matt Maguire**

205.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

206.    Patrick Maguire and Jean Rieke owed fiduciary duties of loyalty, care and good faith to OneJet and its shareholders and creditors at all times pertinent to this Complaint.

207.    Patrick and Rieke breached those duties by acting and omitting to act as described in this Complaint above, and Paragraph 193 in particular.

208.    Matt Maguire knew of Patrick and Rieke's multiple breaches of fiduciary duties. With that knowledge, Maguire provided material and substantial assistance in connection with, and knowingly participated in, Patrick and Rieke's and breaches.

209.    As a result, Matt Maguire is liable as an aider and abettor.  The tortious acts or omissions of Maguire as an aider and abettor directly and proximately caused harm to OneJet, OneJet's property and the bankruptcy estate in an amount to be determined at trial.

210.    The conduct of Maguire was willful, malicious and fraudulent, and justifies the imposition of exemplary damages.

WHEREFORE, the Trustee prays that this Honorable Court enter judgment against Matt Maguire and in favor of the Trustee for damages in an amount to be determined at trial, exemplary damages, attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT V

## AVOIDANCE OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547
### Against Matt Maguire

211.   The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

212.   As described more particularly above, during the one-year period preceding the Petition Date Matt Maguire received transfers of monies from OneJet in an aggregate amount of at least $892,226 (for purposes of this Count, collectively, the "Preferential Transfers").

213.   Matt Maguire was an "insider" of OneJet within the meaning of 11 U.S.C. §101(31) at the time of the Preferential Transfers.

214.   The Preferential Transfers were made from one or more of OneJet's bank accounts, and therefore constituted transfers of an interest of OneJet in property.

215.   The Preferential Transfers are avoidable preferences in that the Preferential Transfers:

   a.   were made while OneJet was insolvent;

   b.   were made to or for the benefit of Matt Maguire, who was allegedly a creditor of OneJet by virtue of his claimed right to receive the Preferential Transfers for compensation and reimbursement of alleged business expenses;

   c.   were made on account of an antecedent debt allegedly owed by OneJet;

   d.   were made within one year before the Petition Date to Matt Maguire, who was an insider; and

   e.   enabled Matt Maguire to recover more than he would receive if the Preferential Transfers had not been made, he participated in the distribution of the assets of the

bankrupt estate pursuant to chapter 7 of the Bankruptcy Code, and he received payment under the Bankruptcy Code.

216.    Accordingly, the Trustee is entitled to avoid and set aside the Preferential Transfers pursuant to 11 U.S.C. §547.

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against Matt Maguire avoiding and setting aside the Preferential Transfers in the amount of $892,226, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

### COUNT VI

### AVOIDANCE OF ACTUAL FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§544(a) AND (b)(1); CAL. CIV. CODE §§ 3439.04(a)(1) AND 3439.07
### Against Matt Maguire

217.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

218.    As described more particularly above, Matt Maguire received transfers of monies from OneJet in an aggregate amount of at least $2,347,125.15 from approximately June 2015 through September 2018.   For purposes of this Count, each of those transfers is referred to individually as a "Fraudulent Transfer" and collectively as the "Fraudulent Transfers."

219.    Matt Maguire was an "insider" of OneJet within the meaning of 11 U.S.C. §101(31) at the time of each Fraudulent Transfer.

220.    The Fraudulent Transfers to Matt Maguire were made from one or more of OneJet's bank accounts, and therefore constituted transfers of an interest of OneJet in property.

221.    At the time of each Fraudulent Transfer, OneJet was insolvent, undercapitalized, and unable to pay its debts as they came due.

222.    The Fraudulent Transfers were not made in good faith and, from and after no later than October 2015, each of the Fraudulent Transfers was made while OneJet was being operated as or with the characteristics of a fraudulent Ponzi scheme.

223.    Although the Trustee acknowledges that any executive is entitled to reasonable compensation and reimbursement for legitimate business expenses, the compensation and reimbursement Maguire received from OneJet was illegitimate or excessive under the circumstances, and OneJet did not receive of reasonably equivalent value in exchange for the Fraudulent Transfers.

224.    Maguire caused OneJet to make the Fraudulent Transfers with the actual intent to hinder, delay or defraud one or more creditors of OneJet.  Evidence of such intent includes that the Fraudulent Transfers:

  a.  were made while OneJet was insolvent, or OneJet became insolvent shortly after the transfers were made;

  b.  were made to an insider;

  c.  were made without OneJet receiving consideration of reasonably equivalent value;

  d.  were concealed from investors and creditors of OneJet;

  e.  were made after Maguire knew that OneJet was on the verge of bankruptcy and while OneJet was being operated as or with the characteristics of a fraudulent Ponzi scheme; and

  f.  were frequently made shortly after substantial debts were incurred.

225.    One or more creditors exist who hold general unsecured claims that are allowable under Section 502 of the Bankruptcy Code and would be entitled to avoid each of the Fraudulent Transfers under California's Uniform Voidable Transactions Act or former Uniform Fraudulent

Transfer Act.  For example, Boomtown CIO has a claim in the amount of $30,066.03 for debts incurred before the Fraudulent Transfers were made.  Moreover, the United States of America is also owed debts that would entitle it to avoid the Fraudulent Transfers.

226.    Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Transfers pursuant to 11 U.S.C. §§544(a) and (b)(1); and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07.

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against Matt Maguire avoiding and setting aside the Fraudulent Transfers in the amount of $2,347,125.15, less any amounts determined at trial to have been transferred for reasonable and legitimate compensation or reimbursement, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT VII

### AVOIDANCE OF ACTUAL FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §548(a)(1)(A)
### Against Matt Maguire

227.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

228.    As described more particularly above, Matt Maguire received transfers of monies from OneJet in an aggregate amount of at least $1,632,624.71 during the two-year period preceding the Petition Date.  For purposes of this Count, each of those transfers is referred to individually as a "Fraudulent Transfer" and collectively as the "Fraudulent Transfers."

229.    Matt Maguire was an "insider" of OneJet within the meaning of 11 U.S.C. §101(31) at the time of each Fraudulent Transfer.

230.    The Fraudulent Transfers to Matt Maguire were made from one or more of OneJet's bank accounts, and therefore constituted transfers of an interest of OneJet in property.

231.    At the time of each Fraudulent Transfer, OneJet was insolvent, undercapitalized, and unable to pay its debts as they came due.

232.    The Fraudulent Transfers were not made in good faith and, from and after no later than October 2015, each of the Fraudulent Transfers was made while OneJet was being operated as or with the characteristics of a fraudulent Ponzi scheme.

233.    Although the Trustee acknowledges that any executive is entitled to reasonable compensation and reimbursement for legitimate business expenses, the compensation and reimbursement Maguire received from OneJet was illegitimate or excessive under the circumstances, and OneJet did not receive of reasonably equivalent value in exchange for the Fraudulent Transfers.

234.    Maguire caused OneJet to make the Fraudulent Transfers with the actual intent to hinder, delay or defraud one or more creditors of OneJet.  Further evidence of such intent includes the facts alleged in paragraph 224 above.

235.    Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Transfers pursuant to 11 U.S.C. §548(a)(1)(A).

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against Matt Maguire avoiding and setting aside the Fraudulent Transfers in the amount of $1,632,624.71, less any amounts determined at trial to have been transferred for reasonable and legitimate compensation or reimbursement, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

<u>**COUNT VIII**</u>

<u>**AVOIDANCE OF CONSTRUCTIVELY FRAUDULENT TRANSFERS PURSUANT TO
11 U.S.C. §§544(a) AND (b)(1); CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05 AND 3439.07**</u>
**Against Matt Maguire**

236.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

237.    As described more particularly above, Matt Maguire received transfers of monies from OneJet in an aggregate amount of at least $2,347,125.15 from approximately June 2015 through September 2018.  For purposes of this Count, each of those transfers is referred to individually as a "<u>Fraudulent Transfer</u>" and collectively as the "<u>Fraudulent Transfers</u>."

238.    The Fraudulent Transfers to Matt Maguire were made from one or more of OneJet's bank accounts, and therefore constituted transfers of an interest of OneJet in property.

239.    Although the Trustee acknowledges that any executive is entitled to reasonable compensation and reimbursement for legitimate business expenses, the compensation and reimbursement Maguire received from OneJet was illegitimate or excessive under the circumstances, and OneJet did not receive of reasonably equivalent value in exchange for the Fraudulent Transfers.

240.    OneJet was insolvent at the time of each Fraudulent Transfer, or became insolvent as a result of the Fraudulent Transfer.

241.    At the time of each Fraudulent Transfer, OneJet: (i) was engaged or about to be engaged in a business or transaction for which OneJet's remaining assets were unreasonably small in relation to the business or transaction, and/or (ii) intended to incur, or believed or reasonably should have believed that OneJet would incur, debts beyond OneJet's ability to pay as they became due.

242.    One or more creditors exist who hold general unsecured claims that are allowable under Section 502 of the Bankruptcy Code and would be entitled to avoid each of the Fraudulent Transfers under California's Uniform Voidable Transactions Act or former Uniform Fraudulent Transfer Act.  For example, Boomtown CIO has a claim in the amount of $30,066.03 for debts incurred before the Fraudulent Transfers were made.  Moreover, the United States of America is also owed debts that would entitle it to avoid the Fraudulent Transfers.

243.    Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Transfers pursuant to 11 U.S.C. §§544(a) and (b)(1); and Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07.

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against Matt Maguire avoiding and setting aside the Fraudulent Transfers in the amount of $2,347,125.15, less any amounts determined at trial to have been transferred reasonable and legitimate compensation or reimbursement, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT IX

## AVOIDANCE OF CONSTRUCTIVELY FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §548(a)(1)(B)
**Against Matt Maguire**

244.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

245.    As described more particularly above, Matt Maguire received transfers of monies from OneJet in an aggregate amount of at least $1,632,624.71 during the two-year period preceding the Petition Date.  For purposes of this Count, each of those transfers is referred to individually as a "Fraudulent Transfer" and collectively as the "Fraudulent Transfers."

246.     The Fraudulent Transfers to Matt Maguire were made from one or more of OneJet's bank accounts, and therefore constituted transfers of an interest of OneJet in property.

247.     Matt Maguire was an "insider" of OneJet within the meaning of 11 U.S.C. §101(31) at the time of each Fraudulent Transfer.

248.     Although the Trustee acknowledges that any executive is entitled to reasonable compensation and reimbursement for legitimate business expenses, the compensation and reimbursement Maguire received from OneJet was illegitimate or excessive under the circumstances, and OneJet did not receive of reasonably equivalent value in exchange for the Fraudulent Transfers.

249.     At the time of each Fraudulent Transfer, OneJet: (i) was insolvent, or became insolvent as a result of the Fraudulent Transfer, (ii) was engaged or about to be engaged in a business or transaction for which OneJet's remaining property was unreasonably small capital, and/or (iii) intended to incur, or believed that OneJet would incur, debts beyond its ability to pay as such debts matured.

250.     Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Transfers pursuant to 11 U.S.C. §548(a)(1)(B).

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against Matt Maguire avoiding and setting aside the Fraudulent Transfers in the amount of $1,632,624.71, less any amounts determined at trial to have been transferred for reasonable and legitimate compensation or reimbursement, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

**COUNT X**

**AVOIDANCE OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547**
**Against PVP, Maguire/Maguire, Estate of Patrick Maguire, Rieke and The Trust**

251.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

252.    As described more particularly above, during the one-year period preceding the Petition Date Maguire/Maguire received transfers of monies from OneJet in an aggregate amount of at least $2,647,122.04.  For purposes of this Count, each of those transfers is referred to individually as a "Preferential Transfer" and collectively as the "Preferential Transfers," and the Defendants named in this Count are referred to collectively as the "Transferees."

253.    Each Fraudulent Transfer received by Maguire/Maguire was made by OneJet for the benefit of Maguire/Maguire and the other Transferees, each of which was an immediate or mediate transferee of the initial transferee, Maguire/Maguire.

254.    The Transferees were "insiders" of OneJet within the meaning of 11 U.S.C. §101(31) at the time of each Fraudulent Transfer.

255.    The Preferential Transfers were made from one or more of OneJet's bank accounts, and therefore constituted transfers of an interest of OneJet in property.

256.    The Preferential Transfers are avoidable preferences in that the Preferential Transfers:

    a.    were made while OneJet was insolvent;

    b.    were made to Maguire/Maguire and for the benefit of Maguire/Maguire, Patrick and Rieke as partners of PVP, which is a creditor;

    c.    were made on account of an antecedent debt allegedly owed by OneJet;

d.  were made within one year before the Petition Date to and for the benefit of
insiders; and

e.  enabled the Transferees to recover more than they would receive if the Preferential
Transfers had not been made, they participated in the distribution of the assets of
the bankrupt estate pursuant to chapter 7 of the Bankruptcy Code, and they received
payment under the Bankruptcy Code.

257.    Accordingly, the Trustee is entitled to avoid and set aside the Preferential Transfers
pursuant to 11 U.S.C. §547.

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment
against each of the Transferees avoiding and setting aside the Preferential Transfers in the amount
of $2,647,122.04, and awarding the Trustee attorney's fees and costs, and such other relief as this
Honorable Court may deem proper and just.

## COUNT XI

### AVOIDANCE OF ACTUAL FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§544(a) AND (b)(1); CAL. CIV. CODE §§ 3439.04(a)(1) AND 3439.07
### Against PVP, Maguire/Maguire, Estate of Patrick Maguire, Rieke, and The Trust

258.    The Trustee hereby incorporates by reference the preceding paragraphs of this
Complaint as if fully restated herein.

259.    As described more particularly above, Maguire/Maguire received transfers of
monies from OneJet in an aggregate amount of at least $3,695,971.07 during the four-year period
preceding the Petition Date.  For purposes of this Count, each of those transfers is referred to
individually as a "Fraudulent Transfer" and collectively as the "Fraudulent Transfers," and the
Defendants named in this Count are referred to collectively as the "Transferees."

260.    Each Fraudulent Transfer received by Maguire/Maguire was made by OneJet for the benefit of Maguire/Maguire and the other Transferees, each of which was an immediate or mediate transferee of the initial transferee, Maguire/Maguire.

261.    The Transferees were "insiders" of OneJet within the meaning of 11 U.S.C. §101(31) at the time of each Fraudulent Transfer.

262.    The Fraudulent Transfers were made from one or more of OneJet's bank accounts, and therefore constituted transfers of an interest of OneJet in property.

263.    At the time of each Fraudulent Transfer, OneJet was insolvent, undercapitalized, and unable to pay its debts as they came due.

264.    From and after no later than October 2015, each of the Fraudulent Transfers was made while OneJet was being operated as or with the characteristics of a fraudulent Ponzi scheme.

265.    The Fraudulent Transfers were not made in good faith and OneJet did not receive consideration of reasonably equivalent value in exchange for the Fraudulent Transfers.

266.    Patrick and Matt Maguire caused OneJet to make the Fraudulent Transfers with the actual intent to hinder, delay or defraud one or more creditors of OneJet and to further the fraudulent Ponzi scheme.  Evidence of such intent includes that the Fraudulent Transfers:

    a.    were made while OneJet was insolvent, or OneJet became insolvent shortly after the transfers were made;

    b.    were made to or for the benefit of insiders;

    c.    were made without OneJet receiving consideration of reasonably equivalent value;

    d.    were concealed from investors and creditors of OneJet;

e.   were made after the Maguires knew that OneJet was on the verge of bankruptcy and while OneJet was being operated as or with the characteristics of a fraudulent Ponzi scheme; and

f.   were frequently made shortly after substantial debts were incurred.

267.   One or more creditors exist who hold general unsecured claims that are allowable under Section 502 of the Bankruptcy Code and would be entitled to avoid each of the Fraudulent Transfers under California's Uniform Voidable Transactions Act or former Uniform Fraudulent Transfer Act.  For example, Boomtown CIO has a claim in the amount of $30,066.03 for debts incurred before the Fraudulent Transfers were made.  Moreover, the United States of America is also owed debts that would entitle it to avoid the Fraudulent Transfers.

268.   Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Transfers pursuant to 11 U.S.C. §§544(a) and (b)(1); and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07.

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against each of the Transferees avoiding and setting aside the Fraudulent Transfers in the amount of $3,695,971.07, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT XII

### AVOIDANCE OF ACTUAL FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §548(a)(1)(A)
**Against PVP, Maguire/Maguire, Estate of Patrick Maguire, Rieke and The Trust**

269.   The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

270.   As described more particularly above, Maguire/Maguire received transfers of monies from OneJet in an aggregate amount of at least $3,363,754.96 during the two-year period

preceding the Petition Date.  For purposes of this Count, each of those transfers is referred to individually as a "Fraudulent Transfer" and collectively as the "Fraudulent Transfers," and the Defendants named in this Count are referred to collectively as the "Transferees."

271.    Each Fraudulent Transfer received by Maguire/Maguire was made by OneJet for the benefit of Maguire/Maguire and the other Transferees, each of which was an immediate or mediate transferee of the initial transferee, Maguire/Maguire.

272.    The Transferees were "insiders" of OneJet within the meaning of 11 U.S.C. §101(31) at the time of each Fraudulent Transfer.

273.    The Fraudulent Transfers were made from one or more of OneJet's bank accounts, and therefore constituted transfers of an interest of OneJet in property.

274.    At the time of each Fraudulent Transfer, OneJet was insolvent, undercapitalized, and unable to pay its debts as they came due.

275.    From and after no later than October 2015, each of the Fraudulent Transfers was made while OneJet was being operated as or with the characteristics of a fraudulent Ponzi scheme.

276.    The Fraudulent Transfers were not made in good faith and OneJet did not receive consideration of reasonably equivalent value in exchange for the Fraudulent Transfers.

277.    Patrick and Matt Maguire caused OneJet to make the Fraudulent Transfers with the actual intent to hinder, delay or defraud one or more creditors of OneJet and to further the fraudulent Ponzi scheme.  Further evidence of such intent includes the facts alleged in paragraph 266 above.

278.    Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Transfers pursuant to 11 U.S.C. §548(a)(1)(A).

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against each of the Transferees avoiding and setting aside the Fraudulent Transfers in the amount of $3,363,754.96, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT XIII

### AVOIDANCE OF CONSTRUCTIVELY FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§544(a) AND (b)(1); CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05 AND 3439.07
### Against PVP, Maguire/Maguire, Estate of Patrick Maguire, Rieke and The Trust

279.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

280.    As described more particularly above, Maguire/Maguire received transfers of monies from OneJet in an aggregate amount of at least $3,695,971.07 during the four-year period preceding the Petition Date.  For purposes of this Count, each of those transfers is referred to individually as a "Fraudulent Transfer" and collectively as the "Fraudulent Transfers," and the Defendants named in this Count are referred to collectively as the "Transferees."

281.    Each Fraudulent Transfer received by Maguire/Maguire was made by OneJet for the benefit of Maguire/Maguire and the other Transferees, each of which was an immediate or mediate transferee of the initial transferee, Maguire/Maguire.

282.    The Fraudulent Transfers were made from one or more of OneJet's bank accounts, and therefore constituted transfers of an interest of OneJet in property.

283.    OneJet did not receive reasonably equivalent value in exchange for the Fraudulent Transfers.

284.    OneJet was insolvent at the time of each Fraudulent Transfer, or became insolvent as a result of the Fraudulent Transfer.

285.    At the time of each Fraudulent Transfer, OneJet: (i) was engaged or about to be engaged in a business or transaction for which OneJet's remaining assets were unreasonably small in relation to the business or transaction, and/or (ii) intended to incur, or believed or reasonably should have believed that OneJet would incur, debts beyond OneJet's ability to pay as they became due.

286.    One or more creditors exist who hold general unsecured claims that are allowable under Section 502 of the Bankruptcy Code and would be entitled to avoid each of the Fraudulent Transfers under California's Uniform Voidable Transactions Act or former Uniform Fraudulent Transfer Act.  For example, Boomtown CIO has a claim in the amount of $30,066.03 for debts incurred before the Fraudulent Transfers were made.  Moreover, the United States of America is also owed debts that would entitle it to avoid the Fraudulent Transfers.

287.    Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Transfers pursuant to 11 U.S.C. §§544(a) and (b)(1); and Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07.

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against each of the Transferees avoiding and setting aside the Fraudulent Transfers in the amount of $3,695,971.07, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT XIV

### AVOIDANCE OF CONSTRUCTIVELY FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §548(a)(1)(B)
**Against PVP, Maguire/Maguire, Estate of Patrick Maguire, Rieke and The Trust**

288.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

289.     As described more particularly above, Maguire/Maguire received transfers of monies from OneJet in an aggregate amount of at least $3,363,754.96 during the two-year period preceding the Petition Date.  For purposes of this Count, each of those transfers is referred to individually as a "Fraudulent Transfer" and collectively as the "Fraudulent Transfers," and the Defendants named in this Count are referred to collectively as the "Transferees."

290.     Each Fraudulent Transfer received by Maguire/Maguire was made by OneJet for the benefit of Maguire/Maguire and the other Transferees, each of which was an immediate or mediate transferee of the initial transferee, Maguire/Maguire.

291.     The Fraudulent Transfers were made from one or more of OneJet's bank accounts, and therefore constituted transfers of an interest of OneJet in property.

292.     The Transferees were "insiders" of OneJet within the meaning of 11 U.S.C. §101(31) at the time of each Fraudulent Transfer.

293.     OneJet did not receive reasonably equivalent value in exchange for the Fraudulent Transfers.

294.     At the time of each Fraudulent Transfer, OneJet: (i) was insolvent, or became insolvent as a result of the Fraudulent Transfer, (ii) was engaged or about to be engaged in a business or transaction for which OneJet's remaining property was unreasonably small capital, and/or (iii) intended to incur, or believed that OneJet would incur, debts beyond its ability to pay as such debts matured.

295.     Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Transfers pursuant to 11 U.S.C. §548(a)(1)(B).

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against each of the Transferees avoiding and setting aside the Fraudulent Transfers in the amount

of $3,363,754.96, and awarding the Trustee attorney's fees and costs, and such other relief as this

Honorable Court may deem proper and just.

**COUNT XV**

**AVOIDANCE OF ACTUAL FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C.
§§544(a) AND (b)(1); CAL. CIV. CODE §§ 3439.04(a)(1) AND 3439.07**
**Against Spinnaker, Estate of Patrick Maguire, Rieke and The Trust**

296.     The Trustee hereby incorporates by reference the preceding paragraphs of this

Complaint as if fully restated herein.

297.     As described more particularly above, OneJet entered the August 29, 2016 Sale

Agreement to purchase N488TM and, from August 29, 2016 through the Petition Date, OneJet

made all payments for the purchase and finance of the aircraft, totaling at least $1,171,912.37.

298.     OneJet also paid all costs of maintaining N488TM prior to the Petition Date,

including major overhauls and upgrades to increase or maintain the aircraft's value, and depositing

maintenance reserve funds of approximately $363 for each flight hour.

299.     OneJet was the rightful legal owner of N488TM, or alternatively had an equitable

interest in N488TM, by virtue of or to the extent of the monies that OneJet paid to purchase, finance

and maintain the aircraft ("OneJet's Ownership Interest").

300.     On or about September 15, 2016, Patrick and Matt Maguire caused OneJet to enter

into the N488TM Lease with Spinnaker, which was a sham and an artifice.  If and to the extent

OneJet incurred any obligation under the N488TM Lease, such obligation was fraudulent and is

referred to as the "Fraudulent Obligation" for purposes of this Count.

301.     Patrick and Matt Maguire further caused OneJet to assign the Sale Agreement to

Spinnaker, and caused Spinnaker to be registered with the FAA as the owner of N488TM on

October 28, 2016 and to exercise complete control over and assert itself as the owner of the aircraft after the Petition Date, through and including the present.

302.    Patrick and Matt Maguire thereby caused OneJet's Ownership Interest in N488TM to be transferred to Spinnaker, which constituted a transfer of an interest of OneJet in property. For purposes of this Count, this transfer is referred to as the "Fraudulent Transfer," and the Defendants named in this Count are referred to collectively as the "Transferees."

303.    The Fraudulent Obligation was incurred and Fraudulent Transfer received by Spinnaker was made by OneJet for the benefit of Spinnaker and the other Transferees, each of which was an immediate or mediate transferee of the initial transferee, Spinnaker.

304.    The Transferees were "insiders" of OneJet within the meaning of 11 U.S.C. §101(31) at the time the Fraudulent Obligation was incurred and the Fraudulent Transfer was made.

305.    At the time the Fraudulent Obligation was incurred and the Fraudulent Transfer was made, OneJet was insolvent, undercapitalized, and unable to pay its debts as they came due.

306.    The Fraudulent Obligation and Fraudulent Transfer were not incurred or made in good faith and OneJet did not receive consideration of reasonably equivalent value in exchange for the Fraudulent Obligation or Fraudulent Transfer.

307.    Patrick and Matt Maguire caused OneJet to incur the Fraudulent Obligation and make the Fraudulent Transfer with the actual intent to hinder, delay or defraud one or more creditors of OneJet.   Evidence of such intent includes that the Fraudulent Obligation and Fraudulent Transfer:

> a.   were incurred or made while OneJet was insolvent, or OneJet became insolvent
>
>      shortly after the obligation was incurred or transfer was made;

b.   were incurred or made to or for the benefit of insiders;

c.   were incurred or made without OneJet receiving consideration of reasonably equivalent value to the obligation incurred or property transferred;

d.   were concealed from investors and creditors of OneJet;

e.   were incurred or made after the Maguires knew that OneJet was on the verge of bankruptcy and while OneJet was being operated as or with the characteristics of a fraudulent Ponzi scheme; and

f.   were incurred or made shortly after substantial debts were incurred.

308.   One or more creditors exist who hold general unsecured claims that are allowable under Section 502 of the Bankruptcy Code and would be entitled to avoid the Fraudulent Obligation and Fraudulent Transfer under California's Uniform Voidable Transactions Act.  For example, Boomtown CIO has a claim in the amount of $30,066.03 for debts incurred before the Fraudulent Obligation was incurred and the Fraudulent Transfer was made.  Moreover, the United States of America is also owed debts that would entitle it to avoid the Fraudulent Obligation and Fraudulent Transfer.

309.   Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Obligation and Fraudulent Transfer pursuant to 11 U.S.C. §§544(a) and (b)(1); and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07.

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against each of the Transferees avoiding and setting aside the Fraudulent Obligation and Fraudulent Transfer or its value in an amount to be determined at trial, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT XVI

## AVOIDANCE OF ACTUAL FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §548(a)(1)(A)
### Against Spinnaker, Estate of Patrick Maguire, Rieke and The Trust

310.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

311.    As described more particularly above, OneJet entered the August 29, 2016 Sale Agreement to purchase N488TM and, from August 29, 2016 through the Petition Date, OneJet made all payments for the purchase and finance of the aircraft, totaling at least $1,171,912.37.

312.    OneJet also paid all costs of maintaining N488TM prior to the Petition Date, including major overhauls and upgrades to increase or maintain the aircraft's value, and depositing maintenance reserve funds of approximately $363 for each flight hour.

313.    OneJet was the rightful legal owner of N488TM, or alternatively had an equitable interest in N488TM, by virtue of or to the extent of the monies that OneJet paid to purchase, finance and maintain the aircraft ("OneJet's Ownership Interest").

314.    On or about September 15, 2016, Patrick and Matt Maguire caused OneJet to enter into the N488TM Lease with Spinnaker, which was a sham and an artifice.  If and to the extent OneJet incurred any obligation under the N488TM Lease, such obligation was fraudulent and is referred to as the "Fraudulent Obligation" for purposes of this Count.

315.    Patrick and Matt Maguire further caused OneJet to assign the Sale Agreement to Spinnaker, and caused Spinnaker to be registered with the FAA as the owner of N488TM on October 28, 2016 and to exercise complete control over and assert itself as the owner of the aircraft after the Petition Date, through and including the present.

316.     Patrick and Matt Maguire thereby caused OneJet's Ownership Interest in N488TM to be transferred to Spinnaker, which constituted a transfer of an interest of OneJet in property. For purposes of this Count, this transfer is referred to as the "<u>Fraudulent Transfer</u>," and the Defendants named in this Count are referred to collectively as the "<u>Transferees</u>."

317.     The Fraudulent Obligation was incurred and Fraudulent Transfer received by Spinnaker was made by OneJet for the benefit of Spinnaker and the other Transferees, each of which was an immediate or mediate transferee of the initial transferee, Spinnaker.

318.     The Transferees were "insiders" of OneJet within the meaning of 11 U.S.C. §101(31) at the time the Fraudulent Obligation was incurred and the Fraudulent Transfer was made.

319.     At the time the Fraudulent Obligation was incurred and the Fraudulent Transfer was made, OneJet was insolvent, undercapitalized, and unable to pay its debts as they came due.

320.     The Fraudulent Obligation was incurred and the Fraudulent Transfer was made while OneJet was being operated as or with the characteristics of a fraudulent Ponzi scheme.

321.     The Fraudulent Obligation and Fraudulent Transfer were not incurred or made in good faith and OneJet did not receive consideration of reasonably equivalent value in exchange for the Fraudulent Obligation or Fraudulent Transfer.

322.     Patrick and Matt Maguire caused OneJet to incur the Fraudulent Obligation and make the Fraudulent Transfer with the actual intent to hinder, delay or defraud one or more creditors of OneJet.  Further evidence of such intent includes the facts alleged in paragraph 307 above.

323.     Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Obligation and Fraudulent Transfer pursuant to 11 U.S.C. §548(a)(1)(A).

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against each of the Transferees avoiding and setting aside the Fraudulent Obligation and Fraudulent Transfer or its value in an amount to be determined at trial, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT XVII

### AVOIDANCE OF CONSTRUCTIVELY FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§544(a) AND (b)(1); CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05 AND 3439.07
### Against Spinnaker, Estate of Patrick Maguire, Rieke and The Trust

324.     The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

325.     As described more particularly above, OneJet entered the August 29, 2016 Sale Agreement to purchase N488TM and, from August 29, 2016 through the Petition Date, OneJet made all payments for the purchase and finance of the aircraft, totaling at least $1,171,912.37.

326.     OneJet also paid all costs of maintaining N488TM prior to the Petition Date, including major overhauls and upgrades to increase or maintain the aircraft's value, and depositing maintenance reserve funds of approximately $363 for each flight hour.

327.     OneJet was the rightful legal owner of N488TM, or alternatively had an equitable interest in N488TM, by virtue of or to the extent of the monies that OneJet paid to purchase, finance and maintain the aircraft ("OneJet's Ownership Interest").

328.     On or about September 15, 2016, Patrick and Matt Maguire caused OneJet to enter into the N488TM Lease with Spinnaker, which was a sham and an artifice.  If and to the extent OneJet incurred any obligation under the N488TM Lease, such obligation was fraudulent and is referred to as the "Fraudulent Obligation" for purposes of this Count.

329.   Patrick and Matt Maguire further caused OneJet to assign the Sale Agreement to Spinnaker, and caused Spinnaker to be registered with the FAA as the owner of N488TM on October 28, 2016 and to exercise complete control over and assert itself as the owner of the aircraft after the Petition Date, through and including the present.

330.   Patrick and Matt Maguire thereby caused OneJet's Ownership Interest in N488TM to be transferred to Spinnaker, which constituted a transfer of an interest of OneJet in property. For purposes of this Count, this transfer is referred to as the "Fraudulent Transfer," and the Defendants named in this Count are referred to collectively as the "Transferees."

331.   The Fraudulent Obligation was incurred and Fraudulent Transfer received by Spinnaker was made by OneJet for the benefit of Spinnaker and the other Transferees, each of which was an immediate or mediate transferee of the initial transferee, Spinnaker.

332.   OneJet did not receive reasonably equivalent value in exchange for the Fraudulent Obligation or Fraudulent Transfer.

333.   OneJet was insolvent at the time the Fraudulent Obligation was incurred and Fraudulent Transfer was made, or became insolvent as a result of the Fraudulent Obligation or Fraudulent Transfer.

334.   At the time of the Fraudulent Obligation and Fraudulent Transfer, OneJet: (i) was engaged or about to be engaged in a business or transaction for which OneJet's remaining assets were unreasonably small in relation to the business or transaction, and/or (ii) intended to incur, or believed or reasonably should have believed that OneJet would incur, debts beyond OneJet's ability to pay as they became due.

335.   One or more creditors exist who hold general unsecured claims that are allowable under Section 502 of the Bankruptcy Code and would be entitled to avoid the Fraudulent

Obligation and Fraudulent Transfer under California's Uniform Voidable Transactions Act. For example, Boomtown CIO has a claim in the amount of $30,066.03 for debts incurred before the Fraudulent Obligation was incurred and the Fraudulent Transfer was made. Moreover, the United States of America is also owed debts that would entitle it to avoid the Fraudulent Obligation and Fraudulent Transfer.

336.     Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Obligation and Fraudulent Transfer pursuant to 11 U.S.C. §§544(a) and (b)(1); and Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07.

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against each of the Transferees avoiding and setting aside the Fraudulent Obligation and Fraudulent Transfer or its value in an amount to be determined at trial, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT XVIII

### AVOIDANCE OF CONSTRUCTIVELY FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §548(a)(1)(B)
### Against Spinnaker, Estate of Patrick Maguire, Rieke and The Trust

337.     The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

338.     As described more particularly above, OneJet entered the August 29, 2016 Sale Agreement to purchase N488TM and, from August 29, 2016 through the Petition Date, OneJet made all payments for the purchase and finance of the aircraft, totaling at least $1,171,912.37.

339.     OneJet also paid all costs of maintaining N488TM prior to the Petition Date, including major overhauls and upgrades to increase or maintain the aircraft's value, and depositing maintenance reserve funds of approximately $363 for each flight hour.

340.    OneJet was the rightful legal owner of N488TM, or alternatively had an equitable

interest in N488TM, by virtue of or to the extent of the monies that OneJet paid to purchase, finance

and maintain the aircraft ("OneJet's Ownership Interest").

341.    On or about September 15, 2016, Patrick and Matt Maguire caused OneJet to enter

into the N488TM Lease with Spinnaker, which was a sham and an artifice.  If and to the extent

OneJet incurred any obligation under the N488TM Lease, such obligation was fraudulent and is

referred to as the "Fraudulent Obligation" for purposes of this Count.

342.    Patrick and Matt Maguire further caused OneJet to assign the Sale Agreement to

Spinnaker, and caused Spinnaker to be registered with the FAA as the owner of N488TM on

October 28, 2016 and to exercise complete control over and assert itself as the owner of the aircraft

after the Petition Date, through and including the present.

343.    Patrick and Matt Maguire thereby caused OneJet's Ownership Interest in N488TM

to be transferred to Spinnaker, which constituted a transfer of an interest of OneJet in property.

For purposes of this Count, this transfer is referred to as the "Fraudulent Transfer," and the

Defendants named in this Count are referred to collectively as the "Transferees."

344.    The Fraudulent Obligation was incurred and Fraudulent Transfer received by

Spinnaker was made by OneJet for the benefit of Spinnaker and the other Transferees, each of

which was an immediate or mediate transferee of the initial transferee, Spinnaker.

345.    The Transferees were "insiders" of OneJet within the meaning of 11 U.S.C.

§101(31) at the time the Fraudulent Obligation was incurred and the Fraudulent Transfer was

made.

346.    OneJet did not receive reasonably equivalent value in exchange for the Fraudulent

Obligation or Fraudulent Transfer.

347.     At the time the Fraudulent Obligation was incurred and the Fraudulent Transfer

was made, OneJet: (i) was insolvent, or became insolvent as a result of the Fraudulent Obligation

or Fraudulent Transfer, (ii) was engaged or about to be engaged in a business or transaction for

which OneJet's remaining property was unreasonably small capital, and/or (iii) intended to incur,

or believed that OneJet would incur, debts beyond its ability to pay as such debts matured.

348.     Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Obligation

and Fraudulent Transfer pursuant to 11 U.S.C. §548(a)(1)(B).

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment

against each of the Transferees avoiding and setting aside the Fraudulent Obligation and

Fraudulent Transfer or its value in an amount to be determined at trial, and awarding the Trustee

attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT XIX

## AVOIDANCE OF ACTUAL FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§544(a) AND (b)(1); CAL. CIV. CODE §§ 3439.04(a)(1) AND 3439.07
### Against Bank OZK

349.     The Trustee hereby incorporates by reference the preceding paragraphs of this

Complaint as if fully restated herein.

350.     As described more particularly above, OneJet entered the August 29, 2016 Sale

Agreement to purchase N488TM.

351.     Patrick and Matt Maguire caused OneJet to assign the Sale Agreement to

Spinnaker.

352.     On or about September 29, 2016, Spinnaker entered into a Term Loan Agreement

with Bank OZK, pursuant to which $1,500,000 was ostensibly borrowed by Spinnaker for the

purpose of purchasing N488TM (the "N488TM Loan").

353.    On or about the same date, Patrick and Matt Maguire caused OneJet to guarantee Spinnaker's performance and payment to Bank OZK under the N488TM Loan (the "Loan Guarantee").  For purposes of this Count, the Loan Guarantee is referred to as the "Fraudulent Obligation."

354.    Patrick and Matt Maguire caused Spinnaker to be registered with the FAA as the owner of N488TM on October 28, 2016, and to exercise complete control over and assert itself as the owner of the aircraft after the Petition Date, through and including the present.

355.    Prior to the Petition Date, all fees and monthly finance payments Bank OZK received under or in connection with the N488TM Loan were paid by OneJet directly to Bank OZK.

356.    Bank OZK received transfers of monies from OneJet in an aggregate amount of at least $365,244.70 from August 2016 through the Petition Date.  For purposes of this Count, each of those transfers is referred to individually as a "Fraudulent Transfer" and collectively as the "Fraudulent Transfers."

357.    The Fraudulent Transfers of money to Bank OZK were made from one or more of OneJet's bank accounts, and therefore constituted transfers of an interest of OneJet in property.

358.    At the time the Fraudulent Obligation was incurred and each Fraudulent Transfer was made, OneJet was insolvent, undercapitalized, and unable to pay its debts as they came due.

359.    OneJet did not receive reasonably equivalent value in exchange for incurring the Fraudulent Obligation or making the Fraudulent Transfers.

360.    Patrick and Matt Maguire caused OneJet to incur the Fraudulent Obligation and make the Fraudulent Transfers with the actual intent to hinder, delay or defraud one or more

creditors of OneJet.  Evidence of such intent includes that the Fraudulent Obligation and each of the Fraudulent Transfers:

     a.  was incurred or made while OneJet was insolvent, or OneJet became insolvent shortly after the obligation was incurred or transfers were made;

     b.  was incurred or made for the benefit of insiders;

     c.  was incurred or made without OneJet receiving consideration of reasonably equivalent value to the obligation incurred or monies transferred;

     d.  was concealed from investors and creditors of OneJet;

     e.  was incurred or made after the Maguires knew that OneJet was on the verge of bankruptcy and while OneJet was being operated as or with the characteristics of a fraudulent Ponzi scheme; and

     f.  was incurred or made shortly after substantial debts were incurred.

361.    One or more creditors exist who hold general unsecured claims that are allowable under Section 502 of the Bankruptcy Code and would be entitled to avoid the Fraudulent Obligation and Fraudulent Transfers under California's Uniform Voidable Transactions Act.  For example, Boomtown CIO has a claim in the amount of $30,066.03 for debts incurred before the Fraudulent Obligation was incurred and the Fraudulent Transfers were made.  Moreover, the United States of America is also owed debts that would entitle it to avoid the Fraudulent Obligation and Fraudulent Transfers.

362.    Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Obligation and Fraudulent Transfers pursuant to 11 U.S.C. §§544(a) and (b)(1); and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07.

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against Bank OZK avoiding and setting aside the Fraudulent Obligation, avoiding and setting aside the Fraudulent Transfers of money in the amount of $365,244.70, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

**COUNT XX**

**AVOIDANCE OF ACTUAL FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §548(a)(1)(A)**
**Against Bank OZK**

363.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

364.    As described more particularly above, OneJet entered the August 29, 2016 Sale Agreement to purchase N488TM.

365.    Patrick and Matt Maguire caused OneJet to assign the Sale Agreement to Spinnaker.

366.    On or about September 29, 2016, Spinnaker entered into a Term Loan Agreement with Bank OZK, pursuant to which $1,500,000 was ostensibly borrowed by Spinnaker for the purpose of purchasing N488TM (the "N488TM Loan").

367.    On or about the same date, Patrick and Matt Maguire caused OneJet to guarantee Spinnaker's performance and payment to Bank OZK under the N488TM Loan (the "Loan Guarantee").  For purposes of this Count, the Loan Guarantee is referred to as the "Fraudulent Obligation."

368.    Patrick and Matt Maguire caused Spinnaker to be registered with the FAA as the owner of N488TM on October 28, 2016, and to exercise complete control over and assert itself as the owner of the aircraft after the Petition Date, through and including the present.

369.     Prior to the Petition Date, all fees and monthly finance payments Bank OZK received under or in connection with the N488TM Loan were paid by OneJet directly to Bank OZK.

370.     Bank OZK received transfers of monies from OneJet in an aggregate amount of at least $365,244.70 from August 2016 through the Petition Date.  For purposes of this Count, each of those transfers is referred to individually as a "Fraudulent Transfer" and collectively as the "Fraudulent Transfers."

371.     The Fraudulent Transfers of money to Bank OZK were made from one or more of OneJet's bank accounts, and therefore constituted transfers of an interest of OneJet in property.

372.     At the time the Fraudulent Obligation was incurred and each Fraudulent Transfer was made, OneJet was insolvent, undercapitalized, and unable to pay its debts as they came due.

373.     OneJet did not receive reasonably equivalent value in exchange for incurring the Fraudulent Obligation or making the Fraudulent Transfers.

374.     Patrick and Matt Maguire caused OneJet to incur the Fraudulent Obligation and make the Fraudulent Transfers with the actual intent to hinder, delay or defraud one or more creditors of OneJet.  Further evidence of such intent includes the facts alleged in paragraph 360 above.

375.     Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Obligation and Fraudulent Transfers pursuant to 11 U.S.C. §548(a)(1)(A).

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against Bank OZK avoiding and setting aside the Fraudulent Obligation, avoiding and setting aside the Fraudulent Transfers of money in the amount of $365,244.70, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT XXI

## AVOIDANCE OF CONSTRUCTIVELY FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§544(a) AND (b)(1); CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05 AND 3439.07
### Against Bank OZK

376.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

377.    As described more particularly above, OneJet entered the August 29, 2016 Sale Agreement to purchase N488TM.

378.    Patrick and Matt Maguire caused OneJet to assign the Sale Agreement to Spinnaker.

379.    On or about September 29, 2016, Spinnaker entered into a Term Loan Agreement with Bank OZK, pursuant to which $1,500,000 was ostensibly borrowed by Spinnaker for the purpose of purchasing N488TM (the "N488TM Loan").

380.    On or about the same date, Patrick and Matt Maguire caused OneJet to guarantee Spinnaker's performance and payment to Bank OZK under the N488TM Loan (the "Loan Guarantee").  For purposes of this Count, the Loan Guarantee is referred to as the "Fraudulent Obligation."

381.    Patrick and Matt Maguire caused Spinnaker to be registered with the FAA as the owner of N488TM on October 28, 2016, and to exercise complete control over and assert itself as the owner of the aircraft after the Petition Date, through and including the present.

382.    Prior to the Petition Date, all fees and monthly finance payments Bank OZK received under or in connection with the N488TM Loan were paid by OneJet directly to Bank OZK.

383.     Bank OZK received transfers of monies from OneJet in an aggregate amount of at least $365,244.70 from August 2016 through the Petition Date.  For purposes of this Count, each of those transfers is referred to individually as a "Fraudulent Transfer" and collectively as the "Fraudulent Transfers."

384.     The Fraudulent Transfers of money to Bank OZK were made from one or more of OneJet's bank accounts, and therefore constituted transfers of an interest of OneJet in property.

385.     OneJet did not receive reasonably equivalent value in exchange for incurring the Fraudulent Obligation or making the Fraudulent Transfers.

386.     OneJet was insolvent at the time the Fraudulent Obligation was incurred and each Fraudulent Transfer was made, or became insolvent as a result of the Fraudulent Obligation or Fraudulent Transfers.

387.     At the time the Fraudulent Obligation was incurred and each Fraudulent Transfer was made, OneJet: (i) was engaged or about to be engaged in a business or transaction for which OneJet's remaining assets were unreasonably small in relation to the business or transaction, and/or (ii) intended to incur, or believed or reasonably should have believed that OneJet would incur, debts beyond OneJet's ability to pay as they became due.

388.     One or more creditors exist who hold general unsecured claims that are allowable under Section 502 of the Bankruptcy Code and would be entitled to avoid the Fraudulent Obligation and Fraudulent Transfers under California's Uniform Voidable Transactions Act.  For example, Boomtown CIO has a claim in the amount of $30,066.03 for debts incurred before the Fraudulent Obligation was incurred and the Fraudulent Transfers were made.  Moreover, the United States of America is also owed debts that would entitle it to avoid the Fraudulent Obligation and Fraudulent Transfers.

389.    Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Obligation and Fraudulent Transfers pursuant to 11 U.S.C. §§544(a) and (b)(1); and Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07.

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against Bank OZK avoiding and setting aside the Fraudulent Obligation, avoiding and setting aside the Fraudulent Transfers of money in the amount of $365,244.70, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT XXII

### AVOIDANCE OF CONSTRUCTIVELY FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §548(a)(1)(B)
**Against Bank OZK**

390.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

391.    As described more particularly above, OneJet entered the August 29, 2016 Sale Agreement to purchase N488TM.

392.    Patrick and Matt Maguire caused OneJet to assign the Sale Agreement to Spinnaker.

393.    On or about September 29, 2016, Spinnaker entered into a Term Loan Agreement with Bank OZK, pursuant to which $1,500,000 was ostensibly borrowed by Spinnaker for the purpose of purchasing N488TM (the "N488TM Loan").

394.    On or about the same date, Patrick and Matt Maguire caused OneJet to guarantee Spinnaker's performance and payment to Bank OZK under the N488TM Loan (the "Loan Guarantee").  For purposes of this Count, the Loan Guarantee is referred to as the "Fraudulent Obligation."

395.    Patrick and Matt Maguire caused Spinnaker to be registered with the FAA as the owner of N488TM on October 28, 2016, and to exercise complete control over and assert itself as the owner of the aircraft after the Petition Date, through and including the present.

396.    Prior to the Petition Date, all fees and monthly finance payments Bank OZK received under or in connection with the N488TM Loan were paid by OneJet directly to Bank OZK.

397.    Bank OZK received transfers of monies from OneJet in an aggregate amount of at least $365,244.70 from August 2016 through the Petition Date.  For purposes of this Count, each of those transfers is referred to individually as a "Fraudulent Transfer" and collectively as the "Fraudulent Transfers."

398.    The Fraudulent Transfers of money to Bank OZK were made from one or more of OneJet's bank accounts, and therefore constituted transfers of an interest of OneJet in property.

399.    OneJet did not receive reasonably equivalent value in exchange for incurring the Fraudulent Obligation or making the Fraudulent Transfers.

400.    At the time the Fraudulent Obligation was incurred and each Fraudulent Transfer was made, OneJet: (i) was insolvent, or became insolvent as a result of the Fraudulent Obligation or Fraudulent Transfers, (ii) was engaged or about to be engaged in a business or transaction for which OneJet's remaining property was unreasonably small capital, and/or (iii) intended to incur, or believed that OneJet would incur, debts beyond its ability to pay as such debts matured.

401.    Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Obligation and Fraudulent Transfers pursuant to 11 U.S.C. §548(a)(1)(B).

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against Bank OZK avoiding and setting aside the Fraudulent Obligation, avoiding and setting aside

the Fraudulent Transfers of money in the amount of $365,244.70, and awarding the Trustee

attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT XXIII

### AVOIDANCE OF ACTUAL FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§544(a) AND (b)(1); CAL. CIV. CODE §§ 3439.04(a)(1) AND 3439.07
**Against Aircraft Holding Company One, LLC**

402.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

403.    As described more particularly above, OneJet and Aircraft Holding Company One, LLC ("Aircraft Holding") entered into the August 29, 2016 Sale Agreement for OneJet to purchase N488TM.

404.    Patrick and Matt Maguire caused OneJet to assign the Sale Agreement to Spinnaker pursuant to the September 16, 2016 Assignment of Sale Agreement, to which OneJet, Spinnaker and Aircraft Holding were parties.

405.    On or about September 29, 2016, Spinnaker entered into a Term Loan Agreement with Bank OZK, pursuant to which $1,500,000 was ostensibly borrowed by Spinnaker for the purpose of purchasing N488TM (the "N488TM Loan").

406.    Patrick and Matt Maguire caused Spinnaker to be registered with the FAA as the owner of N488TM on October 28, 2016, and to exercise complete control over and assert itself as the owner of the aircraft after the Petition Date, through and including the present.

407.    Aircraft Holding received transfers of monies from OneJet in an aggregate amount of at least $806,167.67 in August and September 2016 in connection with the execution and closing of the Sale Agreement.   For purposes of this Count, each of those transfers is referred to individually as a "Fraudulent Transfer" and collectively as the "Fraudulent Transfers."

408.    Aircraft Holding was the initial transferee, or the entity for whose benefit the Fraudulent Transfers were made.

409.    The Fraudulent Transfers to Aircraft Holding were made from one or more of OneJet's bank accounts, and therefore constituted transfers of an interest of OneJet in property.

410.    At the time of each Fraudulent Transfer, OneJet was insolvent, undercapitalized, and unable to pay its debts as they came due.

411.    OneJet did not receive reasonably equivalent value in exchange for the Fraudulent Transfers.

412.    Patrick and Matt Maguire caused OneJet to make the Fraudulent Transfers with the actual intent to hinder, delay or defraud one or more creditors of OneJet.  Evidence of such intent includes that the Fraudulent Transfers:

    a.   were made while OneJet was insolvent, or OneJet became insolvent shortly after the transfers were made;

    b.   were made for the benefit of insiders;

    c.   were made without OneJet receiving consideration of reasonably equivalent value to the monies transferred;

    d.   were concealed from investors and creditors of OneJet;

    e.   were made after the Maguires knew that OneJet was on the verge of bankruptcy and while OneJet was being operated as or with the characteristics of a fraudulent Ponzi scheme; and

    f.   were made shortly after substantial debts were incurred.

413.    One or more creditors exist who hold general unsecured claims that are allowable under Section 502 of the Bankruptcy Code and would be entitled to avoid the Fraudulent Transfers

under California's Uniform Voidable Transactions Act.  For example, Boomtown CIO has a claim in the amount of $30,066.03 for debts incurred before the Fraudulent Transfers were made. Moreover, the United States of America is also owed debts that would entitle it to avoid the Fraudulent Transfers.

414.    Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Transfers pursuant to 11 U.S.C. §§544(a) and (b)(1); and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07.

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against Aircraft Holding Company, LLC avoiding and setting aside the Fraudulent Transfers of money in the amount of $806,167.67, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

### COUNT XXIV

### AVOIDANCE OF CONSTRUCTIVELY FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§544(a) AND (b)(1); CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05 AND 3439.07
**Against Aircraft Holding Company One, LLC**

415.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

416.    As described more particularly above, OneJet and Aircraft Holding entered into the August 29, 2016 Sale Agreement for OneJet to purchase N488TM.

417.    Patrick and Matt Maguire caused OneJet to assign the Sale Agreement to Spinnaker pursuant to the September 16, 2016 Assignment of Sale Agreement, to which OneJet, Spinnaker and Aircraft Holding were parties.

418.    On or about September 29, 2016, Spinnaker entered into a Term Loan Agreement with Bank OZK, pursuant to which $1,500,000 was ostensibly borrowed by Spinnaker for the purpose of purchasing N488TM (the "N488TM Loan").

419.    Patrick and Matt Maguire caused Spinnaker to be registered with the FAA as the owner of N488TM on October 28, 2016, and to exercise complete control over and assert itself as the owner of the aircraft after the Petition Date, through and including the present.

420.    Aircraft Holding received transfers of monies from OneJet in an aggregate amount of at least $806,167.67 in August and September 2016 in connection with the execution and closing of the Sale Agreement.   For purposes of this Count, each of those transfers is referred to individually as a "Fraudulent Transfer" and collectively as the "Fraudulent Transfers."

421.    Aircraft Holding was the initial transferee, or the entity for whose benefit the Fraudulent Transfers were made.

422.    The Fraudulent Transfers to Aircraft Holding were made from one or more of OneJet's bank accounts, and therefore constituted transfers of an interest of OneJet in property.

423.    OneJet did not receive reasonably equivalent value in exchange for the Fraudulent Transfers.

424.    OneJet was insolvent at the time of each Fraudulent Transfer, or became insolvent as a result of the Fraudulent Transfer.

425.    At the time of each Fraudulent Transfer, OneJet: (i) was engaged or about to be engaged in a business or transaction for which OneJet's remaining assets were unreasonably small in relation to the business or transaction, and/or (ii) intended to incur, or believed or reasonably should have believed that OneJet would incur, debts beyond OneJet's ability to pay as they became due.

426.    One or more creditors exist who hold general unsecured claims that are allowable under Section 502 of the Bankruptcy Code and would be entitled to avoid the Fraudulent Transfers under California's Uniform Voidable Transactions Act.   For example, Boomtown CIO has a claim

in the amount of $30,066.03 for debts incurred before the Fraudulent Transfers were made. Moreover, the United States of America is also owed debts that would entitle it to avoid the Fraudulent Transfers.

427.    Accordingly, the Trustee is entitled to avoid and set aside the Fraudulent Transfers pursuant to 11 U.S.C. §§544(a) and (b)(1); and Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07.

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against Aircraft Holding Company, LLC avoiding and setting aside the Fraudulent Transfers of money in the amount of $806,167.67, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT XXV

### RECOVERY OF AVOIDED TRANSFERS UNDER 11 U.S.C. § 550
**Against Matt Maguire, Rieke, Estate of Patrick Maguire, The Trust, Maguire/Maguire, PVP, Spinnaker, Bank OZK and Aircraft Holding**

428.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

429.    The Trustee is entitled to avoid each of the preferential and fraudulent transfers described in this Complaint above.  For purposes of this Count, each of those transfers is referred to individually as an "Avoidable Transfer" and collectively as the "Avoidable Transfers," and the Defendants named in this Count are referred to collectively as the "Transferees."

430.    Each of the Transferees was the initial transferee or the immediate or mediate transferee of one or more of the Avoidable Transfers, or the person or entity for whose benefit one or more of the Avoidable Transfers was made.

431.    Pursuant to 11 U.S.C. § 550(a), Trustee is entitled to recover from the Transferees

the Avoidable Transfers, or their value, received by each Transferee, as follows:

a.    On Count V against Matt Maguire, Preferential Transfers in the amount of $892,226;

b.    On Counts VI and VIII against Matt Maguire, Fraudulent Transfers in the amount of $2,347,125.15;

c.    On Counts VII and IX against Matt Maguire, Fraudulent Transfers in the amount of $1,632,624.71;

d.    On Count X against PVP, Maguire/Maguire, the Estate of Patrick Maguire, Rieke and the Trust, Preferential Transfers in the amount of $2,647,122.04;

e.    On Counts XI and XIII against PVP, Maguire/Maguire, the Estate of Patrick Maguire, Rieke and the Trust, Fraudulent Transfers in the amount of $3,363,754.96;

f.    On Counts XII and XIV against PVP, Maguire/Maguire, the Estate of Patrick Maguire, Rieke and the Trust, Fraudulent Transfers in the amount of $3,363,754.96;

g.    On Counts XV, XVI, XVII and XVIII against Spinnaker, the Estate of Patrick Maguire, Rieke and the Trust, a Fraudulent Transfer in an amount to be determined at trial;

h.    On Counts XIX, XX, XXI and XXII against Bank OZK, Fraudulent Transfers in the amount of $365,244.70; and

i.    On Counts XIII and XXIV against Aircraft Holding Company One, LLC, Fraudulent Transfers in the amount of $806,167.67.

432.    WHEREFORE, the Trustee prays that this Honorable Court enter an order and

judgment against the Transferees directing each Transferee to return to the Trustee the Avoidable

Transfers, or their value, received by each Transferee in the amounts set forth above or to be

determined at trial, as the case may be, and awarding the Trustee attorney's fees and costs, and

such other relief as this Honorable Court may deem proper and just.

## COUNT XXVI

## DISALLOWANCE OF ALL CLAIMS UNDER 11 U.S.C. § 502(d) AND (j)
### Against Matt Maguire, Rieke, Estate of Patrick Maguire, The Trust, Maguire/Maguire, PVP, Spinnaker, Bank OZK and Aircraft Holding

433.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

434.    Each of the Defendants named in this Count (collectively, the "Transferees") is a person or entity from whom property is recoverable under Section 550 of the Bankruptcy Code.

435.    Each of the Transferees was the initial transferee or the immediate or mediate transferee of one or more of the preferential and fraudulent transfers described in this Complaint above (collectively, the "Avoidable Transfers"), or the person or entity for whose benefit one or more of the Avoidable Transfers was made.

436.    The Transferees have not paid or turned over the property or value of the Avoidable Transfers, for which the Transferees are liable under Section 550 of the Bankruptcy Code.

437.    Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of the Transferees and/or their assignees against the Debtor's chapter 7 estate must be disallowed until such time as the Transferees pay to the Trustee an amount equal to the aggregate amount of the Avoidable Transfers for which they are liable.

438.    Pursuant to section 502(j) of the Bankruptcy Code, any and all claims of the Transferees and/or their assignees that have been allowed against the Debtor's chapter 7 estate must be reconsidered and disallowed, until such time as the Transferees pay to the Trustee an amount equal to the aggregate amount of the Avoidable Transfers for which they are liable.

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against each of the Transferees declaring any and all claims held by the Transferees and/or their

assignees disallowed in accordance with 11 U.S.C. §§ 502(d) and 502(j), until and unless the Transferees satisfy the judgments avoiding and setting aside the Avoidable Transfers, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT XXVII

### CONVERSION
**Against Spinnaker, Matt Maguire, The Trust, Estate of Patrick Maguire and Rieke**

439.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

440.    As described more particularly above, OneJet entered the August 29, 2016 Sale Agreement to purchase N488TM and, prior to the Petition Date, made all payments for the purchase and finance of the aircraft, which totaled at least $1,171,912.37, and paid all costs of maintaining N488TM, to include payment of $114,664.47 to remove CFM's mechanic's lien on the aircraft.

441.    Notwithstanding that OneJet was and is in all respects rightfully the lawful and/or equitable owner of N488TM and bore all costs of ownership, Patrick and Matt Maguire caused Spinnaker to be registered as the owner of N488TM and to assert complete control and ownership of the aircraft after the Petition Date through the present, all without the payment of any consideration from Spinnaker to OneJet.

442.    As such, Spinnaker, along with Matt Maguire, the Trust, the Estate of Patrick Maguire, and Rieke have unjustifiably taken possession and control of N488TM for their exclusive use and benefit, thereby converting property belonging to the bankruptcy estate.

WHEREFORE, the Plaintiff prays that this Honorable Court enter an order and judgment against Spinnaker, Matt Maguire, the Trust, the Estate of Patrick Maguire, and Rieke, jointly and

severally, directing that they return N488TM or its value to the Trustee, along with damages for

depreciation of the aircraft's value and all profits generated by the aircraft since the Petition Date,

in an amount to be determined at trial, and awarding the Trustee attorney's fees and costs, and

such other relief as this Honorable Court may deem proper and just.

### COUNT XXVIII

### UNJUST ENRICHMENT
**Against Spinnaker, Estate of Patrick Maguire, Rieke, The Trust, Tri-State Charter, Elm
Aerospace Holdings LLC, Matt Maguire and Heather Maguire**

443.    The Trustee hereby incorporates by reference the preceding paragraphs of this

Complaint as if fully restated herein.

444.    As described more particularly above, OneJet entered the August 29, 2016 Sale

Agreement to purchase N488TM, and prior to the Petition Date made all payments for the purchase

and finance of the aircraft, which totaled at least $1,171,912.37, and paid all costs of maintaining

N488TM, to include payment of $114,664.47 to remove CFM's mechanic's lien on the aircraft.

445.    Notwithstanding that OneJet was and is in all respects rightfully the lawful and/or

equitable owner of N488TM, and bore all costs of ownership, Patrick and Matt Maguire caused

Spinnaker to be registered as the owner of N488TM and to assert complete control and ownership

of the aircraft after the Petition Date through the present, all without the payment of any

consideration from Spinnaker to OneJet.

446.    None of the Defendants made any payments whatsoever to purchase or maintain

N488TM prior to the Petition Date.

447.    Since the Petition Date, and continuing through and including the present,

Spinnaker has placed N488TM into charter flight service, thereby generating significant revenue

for Spinnaker, the Estate of Patrick Maguire, the Trust, Tri-State, Elm Aerospace, and Matt and Heather Maguire.

448.    As such, Spinnaker, along with the Estate of Patrick Maguire, the Trust, Tri-State, Elm Aerospace, and Matt and Heather Maguire, have unjustifiably taken and received the benefits of the substantial sums expended by OneJet to purchase N488TM in the first instance, and to thereafter accumulate equity and maintain the aircraft until the Petition Date.

449.    It would be unconscionable for these Defendants to retain such benefits without compensating OneJet for the value of the same.

WHEREFORE, the Plaintiff prays that this Honorable Court enter judgment against Spinnaker, the Estate of Patrick Maguire, the Trust, Tri-State, Elm Aerospace, Matt Maguire and Heather Maguire, jointly and severally, for restitution of all revenue generated by N488TM since the Petition Date in an amount to be determined at trial, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT XXIX

### UNJUST ENRICHMENT
**Against Matt Maguire**

450.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

451.    As described more particularly above, Matt Maguire caused exorbitant sums of money to be transferred from OneJet to himself as compensation and for reimbursement of alleged business expenses, totaling at least $2,347,125.15 from approximately June 2015 through September 2018.

452.    Although the Trustee acknowledges that any executive is entitled to reasonable compensation and reimbursement for legitimate business expenses, Maguire had no contractual

right to the arbitrary amount he paid to himself, and the compensation and reimbursement Maguire received from OneJet was illegitimate or excessive under the circumstances, not the least of which being OneJet's insolvency and Maguire inadequate performance as CEO even to the extent that he acted in good faith.

453.    The sums Maguire received as reimbursement were for alleged business expenses that were undocumented and, at least in part, for personal expenditures.

454.    It would be unjust for Maguire to retain the benefit of the exorbitant sums of money he received from OneJet.

WHEREFORE, the Plaintiff prays that this Honorable Court enter judgment against Matt Maguire for restitution of monies he unjustly received and retained, in an amount to be determined at trial, and such other relief as this Honorable Court may deem proper and just.

## COUNT XXX

### FRAUD
**Against Matt Maguire, Estate of Patrick Maguire and Rieke**

455.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

456.    As described more particularly above, Maguire knowingly or recklessly made numerous false and misleading statements of material fact and omitted to state material facts regarding OneJet's performance and financial condition.

457.    Maguire materially misrepresented, among other things, revenues, profits, liabilities, assets, and the viability of its operational model.    Maguire made these misrepresentations in, among other places and documents, offering memoranda, financial statements and reports, written and oral presentations, and emails to OneJet's existing and prospective shareholders, investors and lenders, and management.

458.    The Maguire Family also failed to disclose material information known only to them.  The Maguires were under a duty to disclose such information as fiduciaries of OneJet, and because the failure to make disclosures reinforced prior misrepresentations or rendered prior representations false and misleading or half-truths.

459.    The Maguires failed to disclose, among other things, that:

a.    OneJet did not have meaningful accounting, recordkeeping or financial control procedures and systems at any relevant time;

b.    All of OneJet's financial records and data for times prior to early or mid-2016 was irretrievably lost, and OneJet's bookkeeper and accountant had to attempt to reconstruct OneJet's financials;

c.    Maguire relied upon and disseminated financial statements that were not based upon actual data, but rather mere "estimates" of OneJet's financial condition and performance;

d.    OneJet was insolvent, undercapitalized and unable pay its obligations as they came due from at least May 2015 onward;

e.    OneJet was only able to maintain the false appearance of viability through cash infusions from Maguire/Maguire;

f.    OneJet continually failed to pay excise taxes to the IRS fully or on time since September 2015;

g.    OneJet lost substantial money on every "Charter Program" flight it operated;

h.    OneJet paid to purchase, finance and maintain the N488TM aircraft, which was ostensibly owned by Spinnaker; and

i.   There was an agreement among the Maguires that when OneJet received funds from outside investors or other sources, the "first money out" would be transferred to Maguire/Maguire, not used for OneJet's operations or payment of legitimate creditors.

460.    The Maguires' material misrepresentations, and failures to disclose material information, were relied upon by OneJet's existing and prospective investors and lenders to make investments or extend credit to OneJet totaling tens of millions of dollars, which artificially prolonged OneJet's life, caused OneJet to unnecessarily accumulate additional debt, and further diminished OneJet's assets.  In addition, had OneJet's Innocent Officers or shareholders known of OneJet's true financial condition or any of the other acts or omissions of the Maguires described in this Complaint, they would have acted to stop the Maguire Family's misconduct and egregious mismanagement of OneJet or seek to liquidate the obviously doomed company long before the Petition Date.

461.    The Maguires knew, or recklessly disregarded, that their conduct constituted a fraud on OneJet's existing and prospective shareholders, investors and lenders, and would and did in fact result in significant harm to OneJet by artificially prolonging OneJet's life, placing it into ever-deepening insolvency, and further diminishing its assets.

462.    The Maguires made the material misrepresentations, and failed to disclose material information, with the intention of inducing investors and lenders to contribute monies to OneJet for the purpose of, among other things, prolonging OneJet's life and securing capital so that Maguire could cause OneJet to continue to pay him exorbitant compensation and expense reimbursements; make monthly finance payments for the purchase of N488TM, and return additional monies to Maguire/Maguire.

463.    OneJet has been damaged by the Maguires' fraudulent conduct alleged herein, which was willful and malicious, and justifies the imposition of exemplary damages.

WHEREFORE, the Trustee prays that this Honorable Court enter judgment against Matt Maguire, Estate of Patrick Maguire and Rieke, jointly and severally, and in favor of the Trustee for damages in an amount to be determined at trial, exemplary damages, attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT XXXI

### CIVIL CONSPIRACY
**Against Matt Maguire, PVP, Estate of Patrick Maguire, Rieke,
Maguire/Maguire, Spinnaker and The Trust**

464.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

465.    Matt Maguire, PVP, Estate of Patrick Maguire, Rieke, Maguire/Maguire, Spinnaker, and the Trust (for purposes of this Count, collectively, the "Maguire Defendants") formed a malicious combination for the purpose of enriching themselves at the expense of OneJet, OneJet's creditors and the bankruptcy estate without lawful authority to do so.

466.    As described more particularly above, the Maguire Defendants acted in concert to facilitate, *inter alia*, (i) the operation of OneJet as a fraudulent ponzi scheme in order to raise additional funds from outside investors for the purpose of artificially prolonging OneJet's life and returning monies to themselves via Maguire/Maguire or PVP, (ii) the fraudulent transfer of OneJet's assets to or for the benefit of the Maguire Defendants, and (iii) the defrauding of OneJet's innocent shareholders.

467.    The acts of the Maguire Defendants as conspirators directly and proximately caused harm to OneJet, OneJet's property and the bankruptcy estate in an amount to be determined at trial.

468.    The acts of the Maguire Defendants were willful, malicious and fraudulent, and justify the imposition of exemplary damages.

WHEREFORE, the Trustee prays that this Honorable Court enter judgment against the Maguire Defendants, jointly and severally, and in favor of the Trustee for damages in an amount to be determined at trial, exemplary damages, attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT XXXII

### DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201
**Against Spinnaker, The Trust, Matt Maguire and Estate of Patrick Maguire**

469.    The Trustee hereby incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

470.    OneJet contracted to purchase N488TM pursuant to the August 29, 2016 Sale Agreement it entered into with Aircraft Holding, paid $813,667.67 through the execution and closing of the Sale Agreement, paid $365,244.70 to Bank OZK on the N488TM Loan, and bore all other costs of owning and maintaining the N488TM prior to the Petition Date.

471.    Spinnaker did not make any payments related N488TM whatsoever prior to the Petition Date, nor did Spinnaker ever pay any consideration to OneJet in exchange for any ownership interest in the aircraft.

472.    OneJet is, and at all times pertinent to this Complaint has been, the rightful and equitable owner of N488TM.

473.    OneJet's assignment of the Sale Agreement to Spinnaker and subsequent registration of N488TM's title to Spinnaker as owner, was a sham and an artifice.

474.    An actual case and controversy presently exists.

WHEREFORE, if and to the extent the Trustee is unable to recover N488TM or its value under the preceding Counts set forth in this Complaint, then the Trustee prays that this Honorable Court enter a judgment, pursuant to 28 U.S.C. §2201, declaring that OneJet retained equitable title to N488TM and directing that N488TM's registration be changed to identify OneJet as record owner of the aircraft.

Dated: October 16, 2020                              Respectfully submitted,

                                                     BERNSTEIN-BURKLEY, P.C.

                                                     By: */s/ John J. Richardson*

                                                        Kirk B. Burkley, Esq.
                                                        PA I.D.: 89511
                                                        John J. Richardson, Esq.
                                                        PA I.D.: 86045
                                                        David A. Jones, Jr., Esq.
                                                        PA I.D.: 317266
                                                        707 Grant Street
                                                        Suite 2200, Gulf Tower
                                                        Pittsburgh, PA 15219
                                                        Phone:    (412) 456-8167
                                                        Fax:      (412) 456-8135
                                                        Email:  jricharsdson@bernsteinlaw.com

                                                        *Special Counsel to the Trustee*